## DUMAS et al. v. KING.

### KING v. DUMAS et al.
#### Nos. 13216, 13222.

Circuit Court of Appeals, Eighth Circuit.
Oct. 11, 1946.

Surrey E. Gilliam, of El Dorado, Ark., for Joe Dumas and W. A. Dumas, partners, doing business under the firm name of Arkansas General Ice Co.

J. R. Wilson, of El Dorado, Ark. (R. H. Peace, of El Dorado, Ark., on the brief), for C. L. King.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

King, an employee, sued under section 16 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216, to recover from his employer (partners operating as the Arkansas General Ice Company) unpaid overtime compensation and an additional equal amount as liquidated damages, in a total sum of $9,176.06. On a trial without a jury, the court entered judgment for $1,509.44, consisting of $629.72 for overtime compensation, an equal amount for liquidated damages, and $250 for an attorney's fee. The employer has appealed from the allowance of any recovery, on the ground that King was employed in a bona fide executive capacity and was therefore not subject to the overtime provisions of the Act.[1] King has cross-appealed from the refusal to allow him more.

On the employer's appeal, the only question is whether the court erred in finding that King was not employed in a bona fide executive capacity, within the definition of that term promulgated by the Administrator.[2]

The parties were agreed that King had been engineer of the ice plant during all of the period involved, but his employer contended that he further had had charge of the manufacturing end of the business and of the employees in that department and that during part of the time he had been assistant manager of both the manufacturing and selling operations of the plant. King denied that he had been either a

---

[1] 29 U.S.C.A. § 213(a) provides: "The provisions of sections 206 [minimum wages] and 207 [maximum hours] of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator) * * *."

[2] By regulation of the Administrator, effective October 24, 1940, 5 F.R. 4077, 29 Code of Fed. Regulations, Cum. Supp., § 541.1, 29 U.S.C.A.Appendix, pp. 625, 626, it was provided:

"*Executive.* The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act [29 U.S.C.A. § 213(a) (1)] shall mean any employee:

"(a) Whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) Who customarily and regularly directs the work of other employees therein, and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) Who customarily and regularly exercises discretionary powers, and

"(e) Who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(f) Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

superintendent or a manager. He testified that he kept the machinery in operation and in condition, but that a considerable part of his time was spent in such tasks as pulling ice, scoring it, assisting in loading it from the platform, and repairing windows, screen doors, cold storage latches and other things around the plant. He estimated that 85 percent of his time was spent in manual labor. A former workman in the plant made a similar estimate. Other witnesses gave instances of manual tasks which they had seen him on various occasions performing. The employer testified that King had no such manual duties and that any work of that nature which he may have done was without the employer's knowledge. An array of witnesses, consisting of employees, former employees, and customers of the plant, was produced to show that King had done very little, if any, of such work, within their observation, and that there was no occasion for him to do so in view of the number of other employees available for that purpose. A more minute detailing of the evidence can serve no useful publication, or other, purpose.

The trial court said in its memorandum opinion: "Whether the plaintiff was employed in a bona fide executive capacity must be determined from the testimony. The plaintiff, to a certain extent, was the manager of the manufacturing department and the plaintiff directed the work of the other employees in that department subject, however, to the general overall supervision of the defendants. There isn't any doubt but that the suggestions of plaintiff and recommendations as to the hiring and firing of employees was given particular weight by the defendants, and in the manufacture of ice and in the general operation of the manufacturing department the plaintiff exercised discretionary powers. He was compensated for his services on a salary basis of more than $30.00 per week, although his salary was in fact calculated upon a monthly basis, but the proof is clear that the plaintiff actually engaged in manual labor in excess of '20 percent of the number of hours worked in the workweek by nonexempt employees under his direction.' It is not contended that the plaintiff was in sole charge of an independent establishment or a physically separated branch establishment. Therefore, it cannot be said in view of the testimony that the plaintiff was employed in a bona fide executive capacity."

Thus, what the court held was that the employer had failed to satisfy the sixth element of the Administrator's definition (footnote 2) of "employee employed in a bona fide executive * * * capacity," by preponderantly proving that King was an employee "Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction".

"Taking the entire evidence," as we said on the same issue in Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, 516, "we are unable to say that this finding of the court was 'clearly erroneous' (Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c)." "This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. * * * The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly." Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 417, 150 A.L.R. 1056. To weigh opposing evidence, determine credibility of witnesses, and choose between permissible inferences is the function of the trial court, and findings of fact thus made cannot ordinarily be said to be clearly erroneous if they are supported by substantial evidence. Kincade v. Mikles, 8 Cir., 144 F.2d 784, 787.

Despite the earnestness of the employer's argument here, that is the situation presented by the record. We cannot hold that the trial court's finding is contrary to the clear weight of the evidence or that it is not supported by substantial evidence, unless we should totally ignore the testimony of King and his witnesses, which the trial court accepted, in part at least, as being credible upon the issue we are considering.

What we have just said is also applicable to King's cross-appeal. The trial court found on all the evidence that King had worked 16 hours overtime a week during the period involved. It was not bound to accept King's general testimony, unsupported by any extraneous evidence such as records, etc., or by other credible testimony, that throughout the period of his employment he had worked at least 72 hours overtime a week in the daytime and at least 5 hours overtime a week at night. Nor does the contention merit serious consideration that the court as a matter of fact should have held that King was on duty 24 hours a day, because it had been agreed that he might be called to the plant from his home at any time, if something went wrong with the machinery. The evidence shows that he was free to go where and do what he pleased during this alleged waiting time, and that he did so, only advising the plant where it would be possible to reach him in case of an emergency.

The Supreme Court said in Skidmore v. Swift & Co., 323 U.S. 134, 136, 137, 140; 65 S.Ct. 161, 163, 164, 89 L.Ed. 124: "We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. * * * This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. * * * Each case must stand on its own facts."

■ In the present case, the trial court plainly was warranted in finding that King was not "engaged to wait" after he left the plant, but that he merely "waited to be engaged." The controlling facts are not similar to those in the Skidmore case, supra, or to those in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118. The view of the trial court further is in harmony with Interpretative Bulletin No. 13 of the Wage and Hour Division, in which it is said: "If the employee is required to remain on call in or about the place of business of the company, the time spent should be considered hours worked. If, on the other hand, the employee is merely required to leave word where he can be reached in the event of a call and is not tied down to any particular place, such time need not ordinarily be considered hours worked." See also Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90, 92.

■ King urges also that he should have been allowed a larger attorney's fee. The considerations which may control the fixing of an attorney's fee necessarily are flexible and inabsolute, and where the matter is submitted abstractly, as it was here, without proof of specific time spent, etc., the question of the amount is simply one of general reasonableness. While trial courts and appellate courts equally are regarded as experts on the value of legal services, McDougal v. Black Panther Oil & Gas Co., 8 Cir., 277 F. 701, 707, a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will interfere only to correct a patent injustice, where the allowance is clearly excessive or insufficient, Mercantile-Commerce Bank & Trust Co. v. Southeast Arkansas Levee Dist., 8 Cir., 106 F.2d 966, 972. It is to be borne in mind also that a statute such as is here involved, in providing for the allowance of a reasonable attorney's fee, does not contemplate an amount in the nature of a speculative or contingent fee, Business Men's Assurance Company of America v. Campbell, 8 Cir., 18 F.2d 223, 226, but merely one that is reasonable on the basis of time necessarily spent and character of effort required, in such relationship to the amount recovered as is fair under the circumstances of the particular situation.

■ While the allowance made by the trial court may seem moderate, we do not feel that it can be said on the record or generally to be so clearly insufficient as to amount to an injustice. It does not appear, however, from its amount, to have been intended to cover services beyond the trial

court and, in the exercise of our appellate discretion, we shall allow King an additional $250 for services necessary in connection with the employer's appeal. Cf. Greenberg v. Arsenal Bldg. Corporation, 2 Cir., 144 F.2d 292, 294.

With this modification, the judgment will be affirmed.