KATIE MARIE SPECHT, APPELLANT, v. BENJAMIN SPECHT, APPELLEE.

27 N. W. 2d 390

Filed May 2, 1947. No. 32168.

*Bertrand V. Tibbels,* for appellant.

*Mothersead & Wright* and *Robert G. Simmons, Jr.,* and *Lewis F. Shull,* for appellee.

Heard before PAINE, CARTER, YEAGER, and CHAPPELL, JJ., and NUSS, District Judge.

YEAGER, J.

This is an action wherein Katie Marie Specht, plaintiff and appellant, sued Benjamin Specht, defendant and appellee, for divorce. In the action she sought a division of property, alimony, and attorney's fees. The ground of action was a charge that defendant had been guilty of extreme cruelty toward plaintiff.

In the action the defendant filed a cross-petition whereby he sought a divorce from plaintiff likewise on the ground of extreme cruelty.

The action was tried to the court at the conclusion of which plaintiff was granted a divorce from defendant and alimony in the amount of $11,000 payable $125 per month commencing June 1, 1946, and continuing until the full amount shall have been paid. Plaintiff was awarded an attorney's fee of $400.

The plaintiff appealed. She did not appeal from that part of the decree awarding her a divorce but only from that part which pertains to division of the property, alimony, and attorney's fees. She contends that the award in these respects is insufficient and erroneous.

The defendant has cross-appealed and as grounds of reversal asserts that the court erred in granting plaintiff a divorce; that the court erred in refusing to grant defendant a divorce; and that the amount of alimony was excessive.

Plaintiff and defendant were married at Fort Collins, Colorado, on March 1, 1929. Plaintiff at the time was 37 years of age and defendant was 42 years of age. Each of said parties had been previously married and each had children by the previous marriage. Plaintiff had six children and defendant five. Plaintiff's children, at the time of the marriage, ranged in age fifteen to five years. The parties, immediately after the marriage, moved onto a rented farm near Gering, Nebraska.

Plaintiff's six children and four of defendant's children, the oldest of which was about seventeen years of age and the youngest about four, were taken into the home.

Plaintiff brought with her to the new home some household goods. No one attempted to fix its value. From the evidence we infer that it had no high intrinsic value. According to his testimony' the defendant had at the time of the marriage invested in property and in money between $4,200 and $4,300. This plaintiff has denied. Her denial is based on inferences which we think find no tangible support in the evidence. We think defendant's testimony must be accepted in this regard. In addition to this defendant received $480 from Germany after the marriage. All other property which the parties had at the time of the trial was accumulated after the marriage.

The action here was instituted by the filing of a petition on December 6, 1945. As already stated the alleged ground for divorce was cruelty. In support of her charge plaintiff adduced evidence of violence upon her by the defendant, cursing at and quarreling with her, partial treatment unfavorable to her children, abusive treatment of her children, requiring some of them to leave the home without just cause, accusing certain of her children of theft from the home, refusal to allow her daughter or daughters to come to the home to care for her at a time when she was convalescing from an operation, and cutting off her ability to make purchases against defendant's credit.

The defendant in support of his charges of cruelty against plaintiff adduced evidence of violence of plaintiff upon defendant, partiality of plaintiff unfavorable to the children of defendant, abuse of defendant's children, and quarreling with defendant.

Without attempting to detail the evidence, the record discloses that during the very early period of the marriage harmony prevailed but soon the parties began to

curse each other. Both admit this. In this respect the record does not disclose that one was worse than the other. That they quarreled often is also admitted and the record fairly discloses that the background of the quarreling was alleged mistreatment of the children of one by the other or alleged partiality. Plaintiff claimed in instances that defendant unduly, unnecessarily, and partially punished her children, that defendant favored his own by giving them more money and presents than he gave to her children, and that without cause he caused her children to leave home.

On the other hand defendant claimed that plaintiff was more severe in the punishment of his children than of her own, that she refused to attend to the wearing apparel of his children as she did for her own, and that she was partial in the assignment of quarters to the children in the home of the parties.

On the record it is impossible to evaluate and place all of the blame for the long-continued inharmonious condition existing between these parties. In all probability all of the blame cannot be placed on one side. We do believe, however, that the legitimate and proper ends of matrimony have been destroyed as between these parties.

In looking for the primary cause or causes for this condition we have looked for and think we have found in the evidence certain incidents which are determinative.

There is evidence of partial punishment or at least partial treatment of plaintiff's children, denied of course by defendant, which if taken alone would not be convincing but when considered with other evidence it carries considerable weight. An instance is an occasion when a son of defendant and a daughter of plaintiff had a violent disagreement. There is nothing to indicate that one was more to blame than the other. The result was that defendant's son was not punished but plaintiff's daughter was quite promptly taken to the train, given $15 for transportation and expense, and

sent away from home to Cheyenne, Wyoming. This was not just for a trip but it was clearly intended as a permanent separation from the family. She was allowed to return later but more in the status of hired help than as a member of the family. On another occasion a son of plaintiff failed to get up for work. The evidence does not disclose the reason. He was given $15 and ordered to leave home. He was allowed to come back in the winter to feed cattle for his board. He was without shoes, having only a pair of rubber boots. Defendant did not provide him with shoes and paid him nothing. Defendant bought three of his sons automobiles. He paid $200 for each of two and $1,200 for the third. He made no similar or comparable gifts to any child or children of plaintiff. He said when plaintiff's children left home he gave each of them $15 and when they got married a shower was given. On one occasion he placed in the bank to the credit of one of his sons something over $2,000. When it was discovered by plaintiff he drew it out and says that he applied it on the purchase of his farm. Whether he so applied it is not made certain by the record. He probably did. He says that he did not intend it as a gift but that it was so placed only as assurance that he would not spend it but would have it available to apply on the purchase price of the farm. Sometime before this action was commenced plaintiff was in a hospital for a serious operation. She indicates that she did not expect to recover. Two of her daughters appear to have been looking after the household. During this time some pieces of "fancy work," as it was described, were removed. Defendant discovered that these articles were missing. The daughters had taken them. He accused them of taking them wrongfully and denied them admission to the home. He upbraided plaintiff on account of it whereupon she informed him that they were taken at her request. The daughters were still thereafter denied admission to the home. Plaintiff

wanted one of her daughters to come to the home and care for her during her convalescence after leaving the hospital. This the defendant refused. He wanted his daughter or daughter-in-law. This the plaintiff refused. In consequence plaintiff stayed with her daughter. At this time or thereabouts, the time is not made certain, defendant cut off her credit. Later plaintiff returned home but not for long. The discord continued but the details of it do not appear in the evidence. Plaintiff left and went to stay with two of her sons and immediately commenced this action which is the third in a series. We shall not discuss the other two but desire only to call attention to the fact.

We think the incidents indicate an attitude of cruelty on the part of defendant which under all the circumstances of this case was destructive of harmony between these parties.

The cruelties charged by defendant have not been and will not be discussed except to say that they have not been in part sufficiently proved and to the extent that they have been sufficiently proved they compare with charges by plaintiff which have not been sufficiently proved or if sufficiently proved were not considered by either party as disrupting cruelties or cruelties sufficient to justify a severance of the marital relationship.

We are of the opinion therefore that plaintiff has sustained sufficient of the allegations of her petition to entitle her to a divorce from the defendant.

We come now to the question of whether or not the court under all the circumstances as disclosed made a sufficient award to the plaintiff by way of alimony, division of property, and attorney's fees.

As already pointed out plaintiff brought to the relationship little of intrinsic value. The defendant apparently brought not more than $4,780. The defendant rented land for farming purposes and purchased equipment for those purposes. The first year, among other crops, approximately 60 acres of beets were raised. The

first year in the production of beets and other crops and in the care of livestock plaintiff and defendant and all of the children who were old enough to do so worked at such tasks as were best suited to their respective ages and abilities. This state of affairs continued until such times as the children of the parties, one by one, left or were sent away. There is no evidence of idleness on the part of anyone in the household. There is no competent evidence of favoritism in the assignment of tasks. All appear to have contributed to the utmost in furtherance of the family enterprise. Farming and beet raising and cattle feeding were expanded and extended. With this extension and expansion and apparent frugal living the enterprise prospered. During none of the time before any child of either party left home was he or she ever paid wages. It appears that the maximum that any child up to the age of 15 years received as spending money was 25 cents a week. Thereafter they received $1 a week. All money, except the milk or cream check and money from eggs and chickens, came into the hands of defendant. At sometime, which time is not certain, the plaintiff was refused permission to receive the milk or cream check. During the time she received this check she was required to use it for the purpose of providing clothing and other necessities for the family.

In 1938 defendant purchased a 160-acre farm for $16,000. He paid $6,640 on the purchase price. At the time of the trial the full purchase price had been paid except for $650. A small house on the farm was enlarged and improved into a nice modern country home. Defendant says his expense in this connection outside of his labor was about $2,800. Other farm buildings were constructed and improved. This farm is the only real estate owned by either of the parties.

At the trial plaintiff called two real estate men who testified expertly as to the value of the farm with its improvements. One gave it as his opinion that the

value was $200 per acre. He placed the value at from $32,000 to $35,000. The opinion of the other was $200 to $225 an acre, or from $32,000 to $36,000. The defendant testified that he thought it was worth about $28,000.

Plaintiff also called a witness who gave his opinion as to the value of the personal property on the farm not including household goods. He placed a value thereon of $9,655.78. Of the property thus appraised by this witness defendant testified, as nearly as we are able to determine from the record, that articles included therein and representing a valuation of approximately the sum of $1,510.60 belonged to two of his sons. With this deduction this witness' valuation of defendant's personal property on the farm would be about $8,145.18. Defendant says that this valuation is too high but he has fixed no value himself and has called no witness as to value.

The cash position of defendant is very much in doubt. On April 23, 1946, he owed the bank $2,125.23. On that date he apparently increased his indebtedness to $3,200. Shortly before the trial herein he sold a shipment or carload of cattle. The number sold or the proceeds thereof were not disclosed in this record. While we can only speculate as to the amount of money received for this carload of cattle we cannot escape a conclusion that it went a long way toward, if it did not in fact equal, the bank loan of $3,200. In addition to this on May 16, 1946, defendant had on deposit in his checking account $187.68.

We think under the circumstances of defendant's failure to make disclosure as to the proceeds of the sale of cattle that it is fair to conclude that they did at least equal the bank loan. This conclusion would leave him in the position of having cash of $187.68.

If then we are to accept the minimum values placed upon the property in question by plaintiff's evidence and deduct therefrom the balance of the mortgage and plaintiff's value of the personal property which defend-

ant claims was appraised as his but not owned by him we must find the net value of the estate is, as nearly as we can determine, $39,682.86. It is to be noted that in his evidence the defendant has made no effort to fix the value of personal property. He has contented himself with the general statement that the values placed thereon in plaintiff's evidence are too high. If we are to take plaintiff's values on personal property, and we think we must, and the defendant's value of the real estate, then the net valuation would be $4,000 less or $35,682.86.

What then is plaintiff, in the light of the value of the estate which has been accumulated and all other facts, and particularly those relating to the accumulation, entitled to as alimony?

In Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721, it was said: "The matter of fixing the amount of alimony in a divorce action is always to be determined by the facts of each case."

In that case by quotation from Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22, it was said: " * * * the court will take into consideration the estate of each party at the time of the marriage, and their respective contributions since, the duration of the marriage, the wife's loss of her interest in the husband's property by virtue of the divorce, the social standing, comforts and luxuries of life which the wife would probably have enjoyed except for the enforced separation, the conduct of the parties leading up to the divorce, and to which party the divorce is granted, their age and condition of health, and all other facts and circumstances, and award an amount in alimony which appears to be fair and equitable between the parties." See Swolec v. Swolec, 122 Neb. 837, 241 N. W. 771; Nathan v. Nathan, 102 Neb. 59, 165 N. W. 955; DeVore v. DeVore, 104 Neb. 702, 178 N. W. 621.

In this case no issue is made of altered social position or loss of luxuries because of separation. The cause

for divorce we have already indicated was attributable to defendant. The defendant brought not more than $4,780 to the marriage. Everything else was accumulated by the joint efforts of the parties and their children during the marriage. Plaintiff's contribution was not limited to the usual and onerous duties of a farmer's wife in the care of household, garden, chickens, and ministration to the needs and wants of her husband and children, but in addition to these duties, which involved the ministration at first to a husband and ten children and later to lesser numbers, she went out and worked with the husband and children at least in the beet fields. There is nothing to indicate that she did not carry on at all times in this wise except during limited periods of disability up to the time of the final separation. It is apparent from the record that idleness here on the part of anyone was intolerable and not tolerated by the defendant.

Under all the facts and circumstances it appears clear under the rules laid down by this court that some approach should be made in this case to an equal division of the property, making due allowance for the estate which defendant brought to the marriage. Undoubtedly plaintiff and her children contributed much to the estate which has been accumulated. It is true that all of her children have long since left home and that two of his remain, but taking into consideration a certain amount of favoritism which has been pointed to and a lack of capacity for work of two of defendant's sons, we cannot think that his children have contributed in a substantially higher degree than hers.

Plaintiff suggests that here there can be no physical division of property by way of alimony. We likewise observe no feasible plan of physical division. We have concluded, as did the trial court, that alimony should be a decree and judgment in favor of plaintiff and against defendant for a fixed sum of money.

Taking therefore into consideration the respective es-

timates as to the value of the estate and the absence of mathematical certainty as to either of them, the amount which plaintiff brought to the marriage, the balance owing upon the real estate mortgage, the elements entering into the value of farming equipment, particularly at this time, the unpredictability of future real estate values, the respective ages of the parties, and all other pertinent matters disclosed by the record, we have come to the conclusion that the award of alimony made by the trial court of $11,000 was inadequate and that in justice and equity it should be increased to $16,000. We are of the opinion that it should be payable at the rate of $150 a month instead of $125 as provided in the decree.

The remaining assigned error to be discussed is that of whether or not the fee allowed for plaintiff's attorney was inadequate. This court is committed to the rule that the allowance of a fee for the service of any attorney for a woman in a divorce action shall adequately compensate for the service necessary to be performed. Beatty v. Beatty, 128 Neb. 258, 258 N. W. 461. However, no fixed or definite measure of value for such services has ever been supplied. We think none can be supplied but that each such situation must be considered on its individual merits.

In this case there is no direct evidence as to the value of the services of the attorney for plaintiff. The only thing that the trial court had and this court has to look to for this purpose is the proceedings before the court. In the light of its observations the trial court allowed a fee of $400.

In Dumas v. King, 157 F. 2d 463, it was stated: "While trial courts and appellate courts equally are regarded as experts on the value of legal services, * * * a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will interfere only to correct a patent injustice, where the allowance is clearly excessive or insufficient, * * *."

Weighed in the light of this observation, which we consider basicly sound, we are unable to say that the fee allowed in this case was clearly insufficient or patently unjust.

It is therefore the opinion of the court that the portion of the decree of the district court awarding a decree of divorce to plaintiff should be and is affirmed; that the portion awarding an attorney's fee of $400 and costs should be and is affirmed; that the award of $11,000 as permanent alimony payable in installments of $125 per month be and it is reversed and that the district court be and is directed to decree to plaintiff an award of $16,000 as permanent alimony to be paid in installments of $150 per month commencing as of June 1, 1946, and continuing on the first day of each month thereafter until the full amount shall have been wholly paid, the same to bear no interest, and in case of death of plaintiff prior to the full payment, all installments thereafter accruing shall be paid to the personal representative of plaintiff for the benefit of her heirs or legatees.

Plaintiff is awarded a fee of $500 for the services of her attorney in this court.

AFFIRMED IN PART,

REVERSED IN PART, WITH DIRECTIONS.

WENKE, J., participating on briefs.