PATRICIA SUE HAMM, APPELLEE AND CROSS-APPELLANT, V. JAMES W. HAMM, APPELLANT AND CROSS-APPELLEE.

422 N.W.2d 336

Filed April 21, 1988.   No. 86-302.

Jerald W. Kerl of Andersen & Kerl, for appellant.

James L. Nelson of Carlson & Nelson, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

BLUE, D.J.

The marriage of the petitioner, Patricia Sue Hamm, and respondent, James W. Hamm, was dissolved on March 25, 1986. The decree provided that the husband was to pay $350 per month child support and maintain health insurance for the child. The husband was to be responsible for the wife's medical debts, except those related to a broken arm. The wife was awarded alimony of $1 per year for a period of 5 years.

The husband appeals from this decree, assigning as error:

    1. The Court erred in awarding child support beyond the husband's ability to pay.

    2. The Court erred in ordering the husband to provide medical insurance for the minor child as long as his child support obligation continued and for the wife for six months after the decree.

    3. The Court erred in ordering the husband to be responsible for the wife's medical indebtedness presently

owed and not paid for by medical insurance, and arising out of the wife's pregnancy.

4. The Court erred in awarding the wife alimony in the amount of one dollar per year for a period of five years and providing that such alimony could be modified during that time period.

The wife cross-appeals from this decree, assigning as error:

1. The Court erred in awarding the [wife] alimony of only $1.00 per year for a period of five years.

2. The Court erred in ordering the [husband] to pay only $500 of the [wife's] attorney's fees.

The petitioner and respondent were married on October 12, 1984. They separated in March of 1985, and this action for dissolution was filed on March 22, 1985. The couple's child, LeeAnna Sue Hamm, was born on the same date that the petition was filed. Initially, paternity was an issue in this case, but was resolved after the husband conceded that he was the father of LeeAnna. Both parties described the marriage in similar terms, stating that "things were bad from Day One."

The husband attended one semester at the University of Nebraska before joining his father to farm in January of 1975. The husband's assets at the time of the trial totaled $48,515. These assets consisted of a one-half interest in a hog operation with his father, a dairy herd consisting of 71 head of cattle with a value of $38,472, a one-half interest in 6 horses, a one-half interest in 2 pieces of farming equipment, a one-half interest in a farrowing house, a 1981 automobile, a checking account, and the cash value of 3 life insurance policies.

It is difficult to determine the husband's income with any exactness. He receives income from two sources: self-employment as a dairy farmer and his share of the hog operation. As to the dairy business, respondent and his father divided the income as follows: "[W]e each have our own cows, and I take all the offspring off of my animals, and the income off the sale of those, however many animals I sell, and that's my income. My father takes the milk off of my animals and pays the expenses against them." The husband's income in 1985, from the sale of livestock, was $7,319.14. He received $2,450 in 1985 from his share of the sale of hogs. This would give him an

average monthly income of $814.

It is claimed by the husband that he was debt-free prior to his marriage with the petitioner. He now owes approximately $7,900 to a bank, has borrowed $2,600 on his life insurance, and owes his parents $3,200.

The husband testified that his average monthly expenses were $815.64, not including payments on the wife's medical bills.

The wife has an associate degree in livestock production from Southeast Community College in Beatrice, Nebraska. Her work experience is very limited, consisting of helping her father-in-law on the farm. She is presently working part-time as a sales clerk for a gross salary of approximately $420 per month. The wife is suffering from a complication from pregnancy called a postphlebitic syndrome. She has a deep venous thrombosis that involves the proximal veins, causing swelling and pain. It extends from the groin to the middle of the abdomen. While this condition may become worse, it appears to be improving, but is potentially disabling in the future. Her physician testified that the wife is now able to be on her feet and work if she can rest occasionally and elevate her legs. There is evidence that the wife's monthly expenses average $600.87, not including the expense of babysitting.

The review of a judgment relating to the dissolution of a marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988).

The district court ordered the husband to pay $350 per month child support. In addition, he was ordered to provide medical insurance for the minor child for as long as the child support obligation continued. The cost of such insurance was $87.50 per month during the 6-month period in which the wife was covered, as well, by insurance; following the 6-month period, the monthly payments would be somewhat less than

$87.50.

Although the husband challenges the wife's claimed monthly expenses for the minor child, his main contention is that he simply cannot afford to meet his child support obligation as ordered by the district court.

The Nebraska Supreme Court has adopted child support guidelines effective October 1, 1987. See, *Brandt v. Brandt*, 227 Neb. 325, 417 N.W.2d 339 (1988); *Fooks v. Fooks*, 226 Neb. 525, 412 N.W.2d 469 (1987). Although these guidelines were not effective at the time this case was tried, they are helpful in attempting to arrive at a fair amount of child support.

The guidelines provide that each party's monthly share of child support expenses is to be calculated according to the percentage contributed by each parent to the parties' combined monthly net income. These guidelines also specify that day care expenses are to be considered independently of the support amount. The court in *Brandt* stated at 327, 417 N.W.2d at 341:

> [W]e do not suggest that an appropriate child support and expense order may be found to be accurate to the penny by applying the suggested guidelines. Other evidence in a particular case may call for an amount different (either more or less) than the amount calculated by the court through use of the guidelines. A judge may not satisfy his duty to act equitably toward all concerned, i.e., the parties and the children, by blindly following suggested guidelines.

It is difficult to apply precise figures in the child support guidelines in this particular case. The record reflects that the wife received a monthly gross salary of approximately $420. The record fails to indicate her net take-home pay. Also, the record reflects that the husband received approximately $814 per month, but again there is no evidence of his monthly take-home pay. Although only an approximation, since we are not supplied with all of the data to complete the formula, the guidelines indicate that the husband would be responsible for child support in the sum of $168. As also stated in *Fooks, supra*, the court indicated that day care expenses were to be considered separately from the child support award. The wife indicated that the cost of day care in her community is $40 per week or

$172 per month. The respondent should pay 66 percent of this amount, which would result in a total amount of child support of $281 per month. The decree also provided that the husband provide medical insurance for the child for so long as the child support obligation continued. Considering this monthly expense, it appears that a proper amount of child support should be $200 per month.

In *Bird v. Bird*, 205 Neb. 619, 621, 288 N.W.2d 747, 748 (1980), the court noted that "[w]hile the cost of caring for a child is an important consideration in determining child support, equally important is the father's ability to make the payments. It is not advantageous to either party to place the payments for child support beyond the reach or capability of the father."

Considering the Nebraska child support guidelines, pertinent case law, and the facts of the case at bar, it appears that the trial court abused its discretion in awarding the petitioner $350 per month child support while additionally requiring the respondent to provide medical insurance for the minor child.

The district court awarded the wife alimony in the amount of $1 per year for 5 years, with the condition that such award may be modified within this period but, in any event, the alimony should not continue for more than the 5-year period. It is the rule in Nebraska that awarding of alimony in marriage dissolution cases is a matter entrusted to the sound discretion of the trial judge. On appeal, an alimony award will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Gale v. Gale*, 224 Neb. 803, 401 N.W.2d 501 (1987). An appropriate award of alimony must turn on reasonableness and the circumstances of each case in light of the factors set forth in Neb. Rev. Stat. § 42-365 (Reissue 1984). The income and earning capacity of each party, as well as the general equities of each situation, must be considered. *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).

The award of alimony ordered by the trial court indeed seems to take into consideration all relevant factors in this case, as is demonstrated by the language in the decree:

The Court finds that in the usual situation of parties

married no longer than the parties to this action with no contribution made to the other of any significant amount, no award of alimony would be appropriate. The Court determines, however, that by virtue of petitioner's post-phlebitic condition resulting from her pregnancy though presently only moderately limiting and relatively quiescent, is not yet determinable in terms of duration and limitation, and contains the possibility of being substantially limiting and disabling in the future. By virtue thereof, the Court finds that for a period of five years from the date of this Decree and no longer, respondent should pay to petitioner by way of alimony the sum of $1.00 per year, the first such payment being due and payable forthwith, and a like amount on the anniversary date of this Decree through and including March 25, 1990; that such alimony is modifiable during said five year term but for no longer period upon showing by petitioner after hearing and notice of a material change in her physical condition and circumstances and a need of petitioner for additional alimony by way of support.

No abuse of discretion is found in the trial court's award of alimony in the case at bar. Also, the record reveals that there was no abuse of discretion on the part of the trial court in ordering the husband to provide medical insurance for the minor child, nor in ordering the husband to be responsible for the wife's medical indebtedness arising out of her pregnancy.

The final issue on appeal is the award of $500 to the wife for attorney fees. The husband contends that he should not be responsible for any portion of the wife's attorney fees, while the wife cross-appeals, contending the award should be increased to the sum of $2,000.

The awarding of attorney fees in marriage dissolution cases is a matter initially entrusted to the sound discretion of the trial judge and, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984).

In *Pfeiffer v. Pfeiffer*, 203 Neb. 137, 142-43, 277 N.W.2d 575, 578 (1979), the court stated:

An award of attorney's fees in an action for dissolution of marriage involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

In applying the guidelines outlined in *Pfeiffer* to the case at bar, it appears that the trial court did not abuse its discretion in awarding petitioner the sum of $500 for attorney fees. As indicated by the transcript in this case, the husband substantially contributed to the high cost of the attorney fees by contesting the paternity of the minor child and resisting the return of the wife's personal belongings.

The wife cross-appeals for $2,000 in attorney fees. This does not appear to be warranted in this case, considering the entire record. The husband does not have the capacity to pay an additional sum for the wife's attorney fees.

The decree of the district court is affirmed. However, it is modified by reducing the child support obligation of the respondent to $200 per month.

AFFIRMED AS MODIFIED.