DANIEL BOAMAH-WIAFE, APPELLANT, V.
CAROL RASHLEIGH, APPELLEE.
614 N.W. 2d 778

Filed July 25, 2000.    No. A-99-689.

Kelly T. Shattuck, of Cohen, Vacanti & Higgins, for appellant.

Karen L. Vervaecke for appellee.

HANNON, INBODY, and CARLSON, Judges.

HANNON, Judge.

## INTRODUCTION

Daniel Boamah-Wiafe filed an application to modify child support and custody. Specifically, Daniel sought full custody of his two minor children, subject to visitation by their mother, Carol Rashleigh, as well as an order terminating his child support payments and requiring Carol to pay child support. Carol cross-petitioned for an adjustment to Daniel's child support and for attorney fees. The trial court dismissed Daniel's application for failing to meet his burden of proof. The court slightly modified child support and granted Carol's request for attorney fees.

Daniel appeals, alleging, inter alia, that the trial court erred in (1) excluding certain testimony; (2) failing to deviate from the Nebraska Child Support Guidelines, based on Daniel's voluntary support of an adult child; (3) awarding attorney fees; and (4) declaring that the award of attorney fees was nondischargeable in bankruptcy. We find that (1) Daniel did not make an offer of proof to preserve his right to appeal the exclusion of testimony; (2) Daniel's legal duty to support his minor children cannot be mitigated by his voluntary support for an adult child; (3) the record does not support the trial court's award of $4,000 in attorney fees, but it does support the allowance of $1,000, and we modify the allowance of attorney fees to that amount; and (4) the determination that the award is not dischargeable in bankruptcy should be stricken from the order.

## PROCEDURAL AND FACTUAL BACKGROUND

Daniel and Carol are the parents of Arthur Y. Boamah-Wiafe, born October 18, 1988, and Linda A. Boamah-Wiafe, born September 7, 1990. In 1994, the trial court ordered that the parties have joint custody over the children with physical custody in Daniel and visitation by Carol. On April 1, 1996, the court found a material change of circumstances had occurred and modified custody and child support, to wit, Carol received sole custody of the children subject to visitation by Daniel. Further, the April 1 order required Daniel to pay $825 per month in child support.

On October 3, 1997, Daniel filed an application to modify custody and child support. Daniel's application alleged that (1) Carol had refused him visitation and telephone contact with the children; (2) the children's behavior and hygiene deteriorated while in Carol's custody; (3) Carol failed to spend adequate time with the children, who were consequently left in the care of their maternal grandparents for extended periods of time; (4) Carol failed to pay her share of court-ordered child-care expenses; (5) Carol failed to notify Daniel of important events occurring in the children's lives, including but not limited to the children's baptism; (6) the children were being physically abused by Carol and her relatives; and (7) Carol had failed to provide for the children's medical and dental needs. For these reasons, Daniel sought full custody of the children subject to visitation by Carol, a termination of his child support obligation, and an order for child support from Carol.

Carol responded by denying Daniel's allegations, except that she did admit that she did not inform Daniel of the children's baptism. Carol also filed a cross-petition seeking sanctions and attorney fees—alleging that Daniel had filed this and other actions for the purpose of harassing her—and a recalculation of child support based on the fact that Daniel's son from a previous relationship, Daniel Boamah-Wiafe, Jr. (Dan Jr.), had turned 19 years of age.

On February 26, 1998, the guardian ad litem, who was appointed on December 30, 1997, made a motion for the court to require that Daniel's visitation be supervised or in the alternative that Daniel be ordered to remain in the presence of the children at all times during visitation with him. The guardian's motion stemmed from her investigation into a "knife" incident occurring at Daniel's house. According to the guardian, Dan Jr. initiated pretend knife fights with the children using actual knives from the kitchen. The record does not show that the trial court ruled upon this motion or entered any order thereupon. Due to Daniel's anger over the guardian's motion, he refused to see the children and had virtually no contact with them for the 13 months prior to the trial on his application.

The trial on Daniel's motion and Carol's cross-petition occurred on April 20, 1999. Carol appeared with counsel, and

Daniel appeared pro se. This case is yet another clear example of the difficulty created for everyone when a party represents himself or herself. Of course, any litigant has the right to do so, but everyone involved suffers when a pro se litigant enters the courtroom with no knowledge or understanding of procedure, the rules of evidence, the burdens of proof, or the substantive law pertinent to the case. We will not further summarize the evidence here, because the record shows that Daniel presented no evidence which was relevant to the issues raised by the pleadings. Carol offered evidence on her cross-petition, and we will discuss her evidence below as it applies to the issues now on appeal.

On May 21, 1999, the trial court issued an order delineating its findings and conclusions. The trial court dismissed Daniel's motion, finding it completely without merit. It slightly modified the child support due when there is only one child to be supported, but that issue is not appealed. However, the trial court granted Carol's cross-petition with respect to attorney fees and ordered Daniel to pay $4,000. Daniel has now perfected this appeal with counsel.

## ASSIGNMENTS OF ERROR

Daniel alleges that the trial court erred by (1) prohibiting Daniel from calling certain witnesses for allegedly not providing their names in discovery, (2) incorrectly stating the standard for modifying custody, (3) prohibiting a lay witness from testifying as to the children's best interests, (4) deciding the case before all the evidence was submitted, (5) denying Daniel the opportunity to present evidence to rebut the presumption of using the standard calculations in the Nebraska Child Support Guidelines, (6) awarding attorney fees without taking evidence on the amount or the reasonableness of the same, and (7) declaring that an award of attorney fees was nondischargeable in bankruptcy.

## STANDARD OF REVIEW

In *Groseth v. Groseth*, 257 Neb. 525, 529, 600 N.W.2d 159, 164 (1999), the Nebraska Supreme Court stated:

> Generally, issues involving the modification of a divorce decree, child visitation, and the amount of child support

are initially entrusted to the discretion of the district court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. . . .

Similarly, a district court's award or denial of attorney fees in a proceeding to modify a divorce decree will be upheld absent an abuse of discretion.

(Citation omitted.)

■ "In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the rules, not judicial discretion, except in those instances when judicial discretion is a factor involved in the admissibility of evidence." *State v. McManus*, 257 Neb. 1, 4, 594 N.W.2d 623, 626 (1999).

■ "An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition." *Stumpf v. Nintendo of America*, 257 Neb. 920, 923, 601 N.W.2d 735, 738 (1999).

## ANALYSIS

■ Daniel's first five assignments of error are without merit for two reasons. First, each is individually contrary to the record or the law as discussed below. Second, Daniel utterly failed in meeting his burden of proof at trial. He simply did not provide evidence relevant to the issues raised by his application, and thus he could not and did not satisfy his burden of proof.

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the minor child require such action. . . . The party seeking modification of child custody bears the burden of showing that a material change in circumstances has occurred.

(Citations omitted.) *Hoins v. Hoins*, 7 Neb. App. 564, 567, 584 N.W.2d 480, 483 (1998). The record clearly shows that Daniel did not show that a material change of circumstances had occurred and that either Carol was unfit or it was in the children's best interests to modify custody. In fact, the record shows that Daniel had virtually no contact with the children for the 13

months prior to trial. We turn now to the individual reasons why Daniel's assignments of error must fail.

*First Assignment of Error.*

At the beginning of the trial, Carol objected to Daniel's witnesses, who were waiting to testify, on the ground that she had requested their names in interrogatories and that Daniel had not provided any names in response. Daniel asserted that he had provided the names of some of the witnesses. The trial court then asked Daniel to produce a copy of his answers to Carol's interrogatories, which Daniel was unable to do. However, Carol did provide a copy, and it listed Dan Jr. as a witness. The trial court stated that Dan Jr. would be allowed to testify, but the other witnesses would not.

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995).

> In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. . . .
>
> In the absence of an offer of proof, the question becomes whether the substance of the evidence was apparent from the context within which the question was asked and whether the evidence would have been material and competent.

(Citation omitted.) *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 818, 572 N.W.2d 362, 366 (1998). Daniel made no offer to show the substance of his proposed witnesses' testimony, with the exception of Dan Jr. Accordingly, Daniel's allegation of error for excluding their testimony cannot be reviewed and therefore fails.

*Second Assignment of Error.*

With respect to Dan Jr.'s testimony, Daniel explained that Dan Jr. would testify about the allegations made about him regarding

the knife play with the children and that he could also testify as to the children's best interests. The trial court voiced its concern that Dan Jr. would not have the foundation to testify as to Carol's fitness or to the children's best interests. Daniel then decided not to call Dan Jr. While we do not agree with the trial court's statements that a witness testifying as to children's best interests must be a psychologist, psychiatrist, or someone with a Ph.D. or master's degree in child development, we also do not agree with Daniel that the trial court necessarily erred. Dan Jr.'s testimony with respect to the knife incident was irrelevant to the proceedings, and the record fails to show what, if anything, Dan Jr. could testify to regarding the grounds for modification alleged in the application. Without an offer of proof or some evidence of the substance of Dan Jr.'s testimony, Daniel's alleged error has not been preserved for appeal, and we do not consider it further.

*Third Assignment of Error.*

Daniel alleges that the trial court incorrectly stated the proper standard for modifying child support and custody. This argument is without merit. The trial court stated:

> [U]nless you can show that she is unfit as a mother or that it's in the best interest that they come live with you, then mediation isn't necessary or your input.
>
> The fact that you think you can be a better — you know, do better for the children than she, you have to show that she's unfit.

The trial court's statement clearly followed the legal standard and was appropriate in the context within which it was made. ·

*Fourth Assignment of Error.*

Daniel also alleges that the trial court made conclusions about the case before all the evidence was offered. Specifically, he claims that the trial court significantly penalized him for representing his own interests, required him to meet higher standards than required by Nebraska law, and intimidated him into not presenting a case. We disagree. The record reflects that the statements Daniel complains of were part of the trial court's explanation of the evidence which had been admitted up to that point. Due to Daniel's unfamiliarity with the rules of evidence, his evi-

dence had not been admitted, and the trial court had only Carol's evidence to rely upon. Daniel penalized himself by walking into a forum with no knowledge or skill in how to conduct himself and how to proceed within that forum. He was given several opportunities to present his case, and he failed to do so. He also maintains that the trial court intimidated him into not giving a closing argument. However, we find that the trial court did not intimidate Daniel. He was given at least two chances to make a closing argument, one of which he clearly utilized.

*Fifth Assignment of Error.*
■ Daniel further complains that the trial court erred in not receiving evidence of the support that he pays for Dan Jr. as a mitigating factor to consider to deviate from the child support guidelines. Neb. Rev. Stat. § 42-371.01(1)(a) (Reissue 1998) states in pertinent part that "[a]n obligor's duty to pay child support for a child terminates when (a) the child reaches nineteen years of age."

> The general rules of the law of parent and child, being based on the child's incapacity, both natural and legal, and its consequent need of protection and care, apply only while the child is under the age of majority, and the father's legal duty to support his child ceases when the child comes of age.

*Waldbaum v. Waldbaum*, 171 Neb. 625, 637, 107 N.W.2d 407, 415 (1961). While the age of majority was higher at the time of *Waldbaum*, the reasoning still applies today. Of course, we applaud any parent who voluntarily assists an adult child, but the voluntary support of an adult child cannot mitigate the parent's legal duty to his or her remaining minor children.

*Sixth and Seventh Assignments of Error.*
Daniel's last two assignments of error relate to the trial court's award of attorney fees. Daniel argues that the trial court's award is contrary to Neb. Rev. Stat. § 25-824(6) (Reissue 1995), which states:

> No party who is appearing without an attorney shall be assessed attorney's fees unless the court finds that the party clearly knew or reasonably should have known that his or

> her action or defense or any part of such action or defense was frivolous or made in bad faith, except that this subsection shall not apply to any situation in which an attorney licensed to practice law in the state is appearing without an attorney, in which case he or she shall be held to the standards for attorneys prescribed in this section.

Daniel also argues that the trial court exceeded its authority when it stated that the award of child support was nondischargeable in bankruptcy.

When a litigant is pro se, the trial court must find that the pro se litigant knew or reasonably should have known that his or her claim was frivolous or made in bad faith before the trial court can award attorney fees. No such finding was made in this case; therefore, an award under § 25-824(6) is improper.

Carol's cross-petition was couched in such a way that we cannot determine whether she sought attorney fees for Daniel's allegedly harassing litigious conduct or as an allowable award by reason of the nature of the case. Attorney fees may be awarded for reasons wholly separate from the purpose of § 25-824.

> Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. . . . Customarily, attorney fees and costs are awarded only to prevailing parties . . . or assessed against those who file frivolous suits.

(Citations omitted.) *Ryan v. Ryan*, 257 Neb. 682, 693, 600 N.W.2d 739, 746 (1999).

We are unable to determine from the record whether this case is a paternity action or a modification of a divorce decree. Daniel's brief states that the parties were divorced by a decree on April 5, 1994. Carol's brief, on the other hand, states that the parties only lived together. If Carol's brief is correct and the parties were never married, this case is essentially a paternity and child support case. Neb. Rev. Stat. § 43-1412(3) (Reissue 1998) provides for the award of attorney fees in such actions. See, also, *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999) (holding that § 43-1412(3) specifically allows for attorney fees in paternity and child support cases). If Daniel's brief

is correct and the parties were married and subsequently divorced, a uniform course of procedure exists in Nebraska jurisprudence for the award of attorney fees in dissolution cases. See *Nimmer v. Nimmer*, 203 Neb. 503, 279 N.W.2d 156 (1979). It is therefore possible that the trial court determined it was allowing attorney fees under statutory authority or a uniform course of procedure, and not under § 25-824. The trial court's finding that the fee was in the "form of child support" leads us to believe that the fee was allowed pursuant to one of these forms of authority. However, the record contains no direct evidence to support an award of attorney fees upon any specific theory.

The only direct evidence introduced to support the amount of an award of attorney fees was Carol's testimony that she incurred fees of "[s]omewhere around $5,000" and that she was asking the court to award her that amount for costs and fees. In the course of final argument, the judge stated to Daniel: "You caused a lot of problems, causing her legal problems, so you're going to pay $4,000 towards her attorney fees." The court's order provided that Daniel was to pay Carol

> the sum of $4,000.00 (Four Thousand and 00/100) for the benefit of [Carol] as court ordered attorney fees and said fees and costs are in the form of child support and not dischargeable in bankruptcy. Said fees shall be paid in full within 6 months from the date of this Order.

It has been held that in awarding attorney fees in a dissolution action, the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of questions, and the customary charges for similar services are all considered. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Murrell v. Murrell*, 232 Neb. 247, 440 N.W.2d 237 (1989); *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988). It is well recognized that an appellate court reviews an award of attorney fees for an abuse of discretion by the trial court. See, *Kellner v. Kellner*, 8 Neb. App. 316, 593 N.W.2d 1 (1999) (dissolution action); *State ex rel. Mooney v. Duer*, 1 Neb. App. 84, 487 N.W.2d 575 (1992) (paternity action).

In nondissolution cases, it has been stated that to determine proper and reasonable attorney fees, it is necessary to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *Schirber v. State*, 254 Neb. 1002, 581 N.W.2d 873 (1998); *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

■ Insofar as justifying a certain fee, the authority listed above indicates that the considerations in dissolution cases are essentially the same as those in nondissolution cases. Some of these items, such as the skill needed, the responsibility assumed, and the care and diligence exercised, are necessarily going to be observed by the trial court and can generally be gleaned from the record by the appellate court. Evidence on these points would probably not be helpful to determine the fee amount. Both trial courts and appellate courts regularly see enough applications for attorney fees that they usually have a fairly accurate notion of the proper rate of hourly charges, but admittedly not always. However, the time and labor required outside of court are generally not going to be reliably known to either the trial court or the appellate court. Under modern practice, the time a lawyer spends on certain activities seems to be a necessary element to convince almost anyone of the value of the services rendered. It seems obvious that if an attorney seeks a fee for his or her client, that attorney should introduce at least an affidavit showing a list of the services rendered, the time spent, and the charges made. The issue before us is how to react when such evidence has not been introduced.

In *Schirber*, 254 Neb. at 1006-07, 581 N.W.2d at 876, the Nebraska Supreme Court stated:

> [W]here the evidence contained in the record supports the fact that the moving party's request for attorney fees and expenses is a reasonable request, per the factors enunciated in *Koehler, supra*, and no other contrary evidence exists or is offered into evidence disputing reasonableness, the request for such reasonable attorney fees and expenses

must be granted. . . . [This] ruling . . . does not, however, create a presumption of validity or abdicate the discretion granted to all trial courts to determine reasonable attorney fees and expenses. . . . [O]ur holding merely stands for the proposition that where the record plainly indicates that a litigant's request for attorney fees and expenses is in fact a reasonable request, and no evidence exists or is offered into evidence to rebut that fact, the attorney fees and expenses must be granted.

In the case at hand, we are not considering a situation where the record plainly indicates that Carol's request, or the amount allowed by the trial court, is reasonable. In fact, after a study of the record, we conclude that the award in this case is unreasonable. The relative incomes of the parties show that Daniel is better able to pay the costs of litigation than Carol. The trial court held that the fee it allowed was "in the form of child support and not dischargeable in bankruptcy." While we believe the part of the order regarding bankruptcy is in error, the statement at least gives a clear indication that the trial judge concluded the fee was justified for reasons connected with the child support litigation. In short, we find that the trial court clearly exercised its discretion to allow attorney fees and that in choosing to do so in this case, it did not abuse its discretion. However, for the reasons stated below, we also conclude that the amount of the award is not supported by the record and that therefore the amount of the award was an abuse of discretion.

In *Winter v. Department of Motor Vehicles*, 257 Neb. 28, 35, 594 N.W.2d 642, 647 (1999), the Nebraska Supreme Court reiterated the considerations from *Schirber* and *Koehler* and then stated, "Such an inquiry necessarily contemplates that some evidentiary showing will be made." In *Winter*, the trial court had allowed attorney fees without giving the party who was required to pay the opportunity to appear and oppose the amount. However, *Winter* did not consider the type of evidentiary showing that was necessary. The State was not given an opportunity to introduce evidence in opposition to the amount applied for. As we cited above, the party opposing the allowance must be given an opportunity to present evidence against the application.

We have found several cases in which a fee had been allowed without formal evidence introduced to support it. We therefore conclude that in the proper case, this evidentiary showing may be the very record before the court but that of course, the opposing party must still be given an opportunity to oppose the application by evidence and argument.

In *Specht v. Specht*, 148 Neb. 325, 335, 27 N.W.2d 390, 395 (1947), the Supreme Court quoted *Dumas v. King*, 157 F.2d 463 (8th Cir. 1946), with approval: " 'While trial courts and appellate courts equally are regarded as experts on the value of legal services . . . a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will interfere only to correct patent injustice . . . .' " In *Specht*, the court noted that there was no direct evidence as to the value of the services of the plaintiff's attorney, but nonetheless affirmed an allowance of $400.

In *Yost v. Yost*, 143 Neb. 80, 8 N.W.2d 686 (1943), the court affirmed a $2,000 attorney fee and specifically noted that the record contained a preliminary order, that depositions had been taken, that many consultations between the attorney and the client were held, that the evidence produced at trial showed patient investigation was required, that the trial lasted 4 days, and that the assets in the marital estate were substantial. In *Dwinnell v. Dwinnell*, 165 Neb. 566, 86 N.W.2d 579 (1957), the court noted that the only evidence on the value of attorney fees was the record of the case, and it affirmed an allowance of $1,800, citing *Yost* as authority. Similarly, in *Shomaker v. Shomaker*, 166 Neb. 164, 88 N.W.2d 221 (1958), citing *Dwinnell*, the court affirmed a $6,500 fee on the basis of the record, but reversed an allowance of $800 for expenses of investigation because it was without support in the bill of exceptions.

In *Lippincott v. Lippincott*, 152 Neb. 374, 41 N.W.2d 232 (1950), the evidence contained opinions stating that the fees allowed by the trial court were reasonable for the value of the legal services rendered and that there was no contradictory evidence presented. However, after noting the excellent character and standing of the attorneys rendering the services and the excellence of the services rendered, *Lippincott* decreased the fees allowed to an amount that it concluded was reasonable. In

*Badberg v. Badberg*, 193 Neb. 844, 229 N.W.2d 552 (1975), the trial court denied an award of attorney fees. The *Badberg* court affirmed, reasoning that the trial was a simple one, the parties were the only witnesses sworn, the record covered only 62 pages, and the trial court took into consideration that one party used marital funds to pay attorney fees. The *Badberg* court stated that while it would have made an additional allowance, it could not say the trial court abused its discretion in not doing so. In *Bralick v. Bralick*, 194 Neb. 183, 231 N.W.2d 129 (1975), the court found a $2,500 award to be on the generous side in view of the fact that the trial lasted 2 days and that the record did not disclose any unusual, extraordinary, or time-consuming service, and therefore it held that the fee allowed by the trial court was sufficient to also cover the attorney fees on appeal.

In *Rinderknecht v. Rinderknecht*, 204 Neb. 648, 284 N.W.2d 569 (1979), the court approved a $2,000 award, noting that the case involved a 2-year period, interrogatories, motions, hearing, and correspondence and consultation with an Indiana counsel. Accordingly, the court affirmed the fee with the observation that the trial court was fully aware of the nature and extent of the services and carefully considered the evidence. In *Pfeiffer v. Pfeiffer*, 203 Neb. 137, 277 N.W.2d 575 (1979), the court affirmed an award with the same observation. In *Starr v. Starr*, 201 Neb. 683, 271 N.W.2d 464 (1978), the court affirmed a $15,000 fee with the observation that the respondent's affairs were quite complicated and that considerable discovery procedures were necessary to develop the facts.

In *Morris v. Morris*, 201 Neb. 479, 268 N.W.2d 431 (1978), an $800 attorney fee to a wife was increased by $3,000, with the court noting that the case was not an ordinary divorce action and that the record established the amount involved, the results obtained, and the time required, all of which justified the additional award. In *Weber v. Weber*, 200 Neb. 659, 265 N.W.2d 436 (1978), the court increased an award of attorney fees after observing that it was not an ordinary divorce case in the light of issues raised by a foreign decree, the property settlement, and the sizable marital estate involved and that the plaintiff's attorney devoted considerable time and skill in preparing and presenting her case.

In *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988), the court concluded that an award of $2,000 to the wife for attorney fees did not appear to be warranted considering the entire record, and the court also noted that the husband did not appear to have the capacity to pay an additional sum for the wife's attorney fees. In *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985), the record contained no showing of the time or effort expended, other than court appearances, and the court affirmed a $1,000 fee as adequate in view of the trial court's discretion.

In *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986), the trial court awarded the Attorney General a $3,000 fee under Neb. Rev. Stat. § 59-1608 (Reissue 1984). Upon appeal, it was noted that the State offered no evidence concerning the amount of time spent. The court also noted that the record clearly demonstrated that the case was complicated and hotly contested, involved substantial pretrial preparation, and required a trial on 2 separate days over a period of 4 months and that the Attorney General handled the case with great skill. Accordingly, the court affirmed the award, and in so doing, it cited other cases, including dissolution cases where it had approved attorney fees when there was no showing of the attorney's time spent on the case.

In *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991), the court affirmed the trial court's award of the plaintiff's attorney fee based upon documentation regarding time spent, air travel expenses incurred, and rates charged by his attorney. In *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991), the court stated that it found the award of attorney fees reasonable in light of the time involved in preparing this case and the general equities and that although the trial court did not include in the record the basis for the award, the trial court did not abuse its discretion. In *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992), the court stated that in view of the routine nature of the issues involved and the fact that the record failed to detail the work performed, the trial court's award of $1,000 was an abuse of discretion.

In *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997), the trial court indicated that it had set

an attorney fee under Neb. Rev. Stat. § 44-359 (Reissue 1993) by using a presumption that the amount offered by the prevailing party was reasonable. *Koehler* held that no such presumption exists, and it lowered the fees substantially.

From the above cases, we conclude that it is not strictly necessary for an applicant for attorney fees to introduce specific evidence to support an award of attorney fees, but before an award of attorney fees will be affirmed upon appeal, the record must contain the information that shows that the award is within the range of the trial court's discretion. "In this respect, a judicial abuse of discretion exists when the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition." *Schirber v. State*, 254 Neb. 1002, 1005, 581 N.W.2d 873, 875 (1998). If the contents of the record, i.e., pleadings, introduced discovery documents, time spent in court as shown by the court record, and doubtless many other items which will support the award, do show the allowed fee not to be unreasonable, then that fee would not be untenable or an abuse of discretion.

Counsel is, however, well advised to introduce direct proof by way of an affidavit or otherwise. The case at hand is a case in point. The only evidence supporting the award is Carol's testimony that she had paid $5,000. To base a fee upon the amount paid by the applicant is essentially the same as relying upon a presumption that the fee paid by the applicant to his or her attorney is reasonable, which would be contrary to *Koehler, supra.* Evidence that the applicant has incurred an attorney fee of at least the amount sought would always be advisable, but such evidence does not establish that the fee is fair and reasonable, and there is no presumption that it is fair and reasonable. Alone, this evidence is inadequate to support a significant fee. By the nature of modern litigation, we suspect that the record alone will usually not support more than the nominal fee and perhaps only a minimal fee at best.

The transcript and bill of exceptions in this case show that Daniel commenced this proceeding by a four-page pleading, and Carol responded with a one-page pleading which she later amended by filing a cross-petition for increased child support.

The pleaded issues were not new or difficult. The record shows that two interim orders were entered indicating two hearings were held in addition to the final hearing. The final hearing lasted 2 hours 20 minutes. The several exhibits consisted mostly of photocopies of W-2 forms and child support worksheets, which would indicate some time was spent preparing for the hearing on Daniel's application for a decrease in child support and Carol's application for an increase. A guardian ad litem was appointed in the case, and that would have taken time as well. The colloquy between the litigants and the court indicates that interrogatories were served and answered, but the record gives no indication of their length, their relevancy, or other information which might indicate the amount that should be allowed for legal service in connection with their use. Therefore, we find that the record does not support a fee anywhere near the amount of $4,000, but we conclude that the record before us supports the allowance of a fee of $1,000.

Statements made at trial lead us to believe that it is possible that Daniel's conduct made this case more time consuming than usual, which might justify an award of attorney fees greater than the record would otherwise indicate, but there is no evidence to justify an award on this unusual basis.

The trial court also found that the attorney fee was in the form of child support and therefore not dischargeable in bankruptcy. The Eighth Circuit Court of Appeals has ruled that such a determination is a question of federal bankruptcy law and not state law. See, e.g., *In re Kline*, 65 F.3d 749 (8th Cir. 1995); *In re Williams*, 703 F.2d 1055 (8th Cir. 1983). Accordingly, that part of the trial court's order making a conclusion in federal law should be stricken. We note that our award of $1,000 in attorney fees is intended to be in regard to Daniel's obligation for the support of his children.

## CONCLUSION

We therefore affirm the order appealed from, except that we modify the order awarding attorney fees from $4,000 to $1,000.

AFFIRMED AS MODIFIED.