STATE OF NEBRASKA, APPELLEE, V. MICHAEL W. RYAN, APPELLEE,
LOUIE M. LIGOURI, APPELLANT.
444 N.W.2d 656

Filed August 11, 1989.    No. 86-879.

Charles D. Hahn for appellant, and Louie M. Ligouri, pro se.

Douglas E. Merz, Richardson County Attorney, for appellee State.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Michael W. Ryan, defendant in *State v. Ryan, ante* p. 74, 444 N.W.2d 610 (1989), was represented in the trial court by Louie M. Ligouri (applicant), an attorney in the private practice of law in Auburn, Nemaha County, Nebraska, and Richard Goos of Lincoln, Lancaster County, Nebraska. Both were court-appointed to represent defendant at the trial level in the case in which defendant was charged, in two counts, with the first degree murders of Luke Stice and James Thimm. The two charges were separated for trial, and only the Thimm case was tried. After that trial, defendant pled guilty to a charge of second degree murder in connection with the death of Luke Stice. Applicant was first appointed by the county court for Richardson County on August 23, 1985, and by the district court on October 8, 1985. He represented defendant in the county court proceedings and, after defendant was bound over to the district court, in the district court.

Richard Goos was an assistant public defender in Lancaster County and was appointed by the district court for Richardson County to represent defendant as cocounsel with applicant. The payment for the representation by Goos was provided for by a contract between Richardson and Lancaster Counties. The contract itself is not before this court, but evidence shows that Goos was to continue to be paid by Lancaster County as an assistant public defender, at his regular salary with attendant fringe benefits, and that Richardson County would reimburse Lancaster County at the rate of $30 per hour for each hour Goos devoted to representing defendant Ryan. Testimony at the fee hearing on Ligouri's applications for fees indicated that Ligouri was also to represent Ryan, as cocounsel, both because it was difficult for one attorney to represent a defendant in a possible capital case and because Goos could not devote sufficient time, on his own, to represent Ryan without assistance.

Applicant represented Ryan from applicant's initial appointment on August 23, 1985, until the court discharged applicant on April 25, 1986. On June 27, 1986, applicant filed his amended fee application, seeking payment of fees. This application showed that applicant had spent 605 hours of time defending Ryan from December 1, 1985, to the date of his discharge. An earlier fee application, filed December 9, 1985, sought payment for 94 hours for services by applicant in November 1985. Applicant thus sought payment for 699 hours of service. After a fee hearing on September 4, 1986, the trial court ordered applicant be paid the total sum of $8,776 for services from August 23, 1985, to his termination. The court further found that applicant had been paid $3,208.25 for his services in county court and district court from August 23 to November 1, 1985; that this sum should be deducted from the total award of fees; and that, therefore, applicant should be paid the additional sum of $5,567.75. The trial court made no specific finding as to hours served by applicant nor as to the rate to be charged.

Applicant timely appealed to this court, assigning as error that the action of the trial court was contrary to law and erroneous in that it did not make a proper allowance for

expenses and fees for applicant in his appointed representation of Ryan. Applicant also sought interest on any amount due him. For the reasons set out below, we reverse the order of the trial court and fix the appropriate fees in this court, but do not make an award for interest.

The brief of Richardson County in this court does not challenge the rate requested by applicant, nor the number of hours submitted for payment. The only points raised are the technical points as to the appropriate form of claim and of payment, discussed and determined adversely to the county in *In re Claim of Rehm and Faesser*, 226 Neb. 107, 410 N.W.2d 92 (1987). Since that case disposed of the underlying issues, those issues will not be discussed again in this opinion.

The record before us shows the following. Applicant was first appointed by the county judge for Richardson County and was first paid $2,000 by the county court for his representation of Ryan for the period of time from August 23 to September 23, 1985, at an apparently agreed rate of $50 per hour for legal services and traveltime, plus .21 per mile for miles traveled. Applicant was also paid for the time from September 23 to October 31, 1985, at the same rates by the trial court. Applicant made later applications for fees, but no further payments were authorized by the trial court.

In a telephone conversation between the trial judge and applicant on December 5 or 6, 1985, the trial judge informed applicant that future payments would be at the rate of $30 per hour and only for hours authorized by the court. Applicant was not satisfied with the hourly rate, nor with the court's involvement with applicant's representation of defendant, and therefore he prepared an order for the court to sign terminating his appointment. Goos then filed a motion that the trial court keep applicant on the case with appropriate remuneration, because Goos felt he alone could not devote sufficient time to the case to represent defendant properly. The record before us does not show that the motion was ever acted on. Because of applicant's continued representation of defendant, it is clear that the trial court did not sign applicant's proposed order.

The controlling statute on the fee questions is Neb. Rev. Stat. § 29-1804.12 (Reissue 1985), which provides:

> Appointed counsel for an indigent felony defendant other than the public defender shall apply to the district court which appointed him or her for all expenses reasonably necessary to permit him or her to effectively and competently represent his or her client and for fees for services performed pursuant to such appointment except if the defendant was not bound over for trial in the district court, the application shall be made in the appointing court. The court, upon hearing the application, shall fix reasonable expenses and fees, and the county board shall allow payment to counsel in the full amount determined by the court.

At the hearing on applicant's fees, the transcript of the fee hearing in the *Rehm and Faesser* case was received in evidence without objection. The trial court noted in that hearing that it thought $50 per hour was an appropriate rate. In the applicant's case, the trial court reduced the hours sharply by examining everything done by applicant in the way of taking depositions, investigating, or consulting with his client, and by not allowing for any time spent by applicant which the trial court determined not to be "necessary." There was no specific finding as to what was "necessary."

The record before us shows that, in the fee hearing, the trial court cross-examined witnesses produced by applicant and made factual statements contradicting evidence adduced by applicant. The trial court's participation in the hearing made it inappropriate for the trial court to make dispositive rulings on applicant's fee applications. Because our analysis of the facts before us discloses, without any doubt, that substantial hours claimed to be devoted to Ryan's representation were spent in applicant's representation of Ryan, we set applicant's fee, in this court, to avoid a further remand.

First of all, the record shows that applicant was present in court for 7 days during the voir dire of prospective jurors. Additionally, 18 days were spent in the actual trial of the cases of defendants Michael Ryan and Dennis Ryan. Of these days, 9 were used by the State in presenting its cases and 9 were used in presenting defendants' cases. In addition, 3 full days were spent in instruction conferences and in final argument after the

evidentiary portion of the trial was concluded.

The defense was somewhat convoluted in that, after others involved in the crimes testified for the State, defendant's only real chance of acquittal was a successful defense of insanity. The matter of the sentence of defendant had to be a real concern throughout the trial. Defendant was tried jointly with his son, and in representing the son, the son's attorneys tried to put as much blame on defendant herein as possible, in order to enhance the son's chances. Since Michael Ryan and his son were tried in a joint trial some confusing positions had to be adopted by the trial attorneys.

At any rate, we calculate each day actually in court as a 6-hour trial day. On each trial day, applicant set out an additional 2 or 3 hours devoted to preparation for the trial. We are satisfied that applicant devoted a total of 8 hours each trial day to representing defendant herein. The total of such time is 8 hours times 28 days, or a total of 224 hours.

Additionally, it is totally appropriate that applicant's amended fee application is recognized as correct in setting out that on each weekend (Saturday and Sunday) during the trial for 5 weeks, applicant spent approximately 6 hours in preparing for trial and in appropriately consulting with defendant and with applicant's cocounsel. This amounts to an additional 30 hours.

In addition, six progression hearings were held after November 1, 1985, by order of the court. Applicant was present at four of those hearings. From our examination of the record, it can be determined that four additional days of court time were required for the progression hearings and other interim motion hearings. The record indicates that such hearings averaged 2 hours per day, or an additional time of 8 hours.

An additional item of controversy is traveltime. The murders of James Thimm and Luke Stice occurred near Rulo, Richardson County, Nebraska, located in the extreme southeast corner of Nebraska. We can only assume that the trial court was unable to provide defendant Ryan with adequate defense counsel in Richardson County. The problem is self-evident, because additional attorneys had to be provided for other defendants (Timothy Haverkamp, James Haverkamp, Dennis

Ryan, and John David Andreas). The pool of attorneys who would, or could, represent such defendants was not large. It is futile to appoint an attorney some distance away to represent a defendant and not to provide compensation for that attorney to reach his client.

As a result, applicant, from Auburn, Nemaha County, Nebraska (35 miles from Falls City, the Richardson County seat), and another Auburn attorney were appointed, as were three attorneys from Lancaster County, one from Pawnee County, and two from Richardson County, to represent various of the five persons involved in the torture and murder of James Thimm. The four attorneys representing Timothy Haverkamp, James Haverkamp, and Andreas were involved a lesser time because their clients agreed to, and did, testify for the State in exchange for lighter sentences. We note, in passing, that such other attorneys were paid at the rate of $50 per hour for at least some of the limited time they served. The upshot was a great deal of traveltime involved for applicant—particularly after the actual trial was moved to Douglas County, some 65 miles from Auburn, and defendant Ryan was incarcerated in Sarpy County. Applicant sought only $332 for travel miles (at an apparently agreed upon rate of .21 per mile). In addition, under the circumstances of this case, defendant should be reimbursed for his time spent in traveling. That time is set out in the fee applications as 49 hours (in addition to 11 hours noted by applicant but not billed).

It can thus be seen that in court-connected time alone, applicant has spent 311 hours in the defense of Michael Ryan. With the trial court's statement that $50 per hour was a reasonable rate, and considering the fact that six witnesses testified that $50 per hour was a minimum rate and that some of these witnesses testified that a reasonable rate would be $65 to $120 per hour, we determine that under the facts of this case, $50 per hour is a reasonable rate. Applicant is entitled to the sum of $15,550 for such court-connected hours alone, without any consideration of research and investigative time spent on the case. The trial court's finding that applicant is entitled to a total of $8,776 for time devoted to the appointed defense of Michael Ryan from August 23, 1985, to April 25, 1986, is not

supported in any way by the undisputed evidence in the record. The order of the trial court as to the fees to be awarded applicant is an abuse of discretion and is hereby set aside and reversed.

In addition to the hours set out above, applicant's fee applications set out that approximately 337 additional hours were spent between November 1, 1985, and April 25, 1986, in investigating the factual background; taking statements and depositions; interviewing his client; researching the law, particularly the insanity issues; conferring with witnesses, including a psychiatrist called by the defense; reviewing evidence, including tapes; preparing for the testimony of the State's psychiatric witness; and appropriately consulting with cocounsel and conferring with all counsels in the case; and in general preparation for depositions and for the trial. A witness list of 58 witnesses was submitted at one time as witnesses to be called. Twenty-four witnesses were actually called by the State at trial. Thirty-one witnesses were called by defendant Dennis Ryan and 11 by defendant Michael Ryan. The record shows mention of other witnesses at other times. Many of these witnesses had to be interviewed and many were deposed. There are in the record of this phase of the trial 14 depositions taken by applicant, either alone or with his cocounsel. The deposition of the father of Luke Stice was 469 pages long. The record before us shows many other depositions were taken. We have reviewed carefully the applicant's fee applications and are not able to conclude that any of his time spent was not necessary. It is the determination of this court that applicant, between November 1, 1985, and February 24, 1986, spent an additional 337 hours in preparing for trial of the Ryan cases.

The trial court's answer to much of applicant's time spent in depositions was that the various police reports were available to defendant's counsel and depositions were unnecessary in most cases. Such an assumption is without foundation in fact or logic.

The ABA Standards For Criminal Justice standard 4-4.1 (2d ed. 1986) provides:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits

of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

A defense lawyer's obligation to investigate seldom can be satisfied by a mere search of police records. It is obvious that statements in such reports may or may not be true, and such statements have to be the subject of closer scrutiny than a mere reading.

Following the trial, applicant spent additional time on posttrial motions and conferences. The amended fee application indicates 12 hours were spent on such activity from April 8 to the time of applicant's termination on April 25, 1986.

Some 349 hours over 133 days (the time between November 1, 1985, and the beginning of the trial on February 24, 1986, and after trial from April 8 to April 25) in legal work relating to the case against defendant cannot be considered excessive. If action had not been taken, the effectiveness of appointed counsel in representing Ryan would be questioned in this court, and in any other court in which Ryan's conviction is reviewed. The greatest number of cases of ineffective counsel rests on allegations by defendants of insufficient investigation and failure to communicate with defendant. As stated in *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Obviously if the representation of defendant was ineffective, the case would have to be retried at additional expense.

We determine that applicant properly spent an additional 349 hours in out-of-court investigation, consultation, and preparation for trial, and in posttrial activities, and that counsel should be paid at the rate of $50 per hour for such time spent. Applicant is entitled to $17,450 for such additional services beyond time actually spent in court.

This means applicant is entitled to a total additional fee of $33,000, plus $332.00 in travel expenses and $207 in telephone

expenses.

For this court to approve the amount awarded to applicant by the trial court would be to send a message that the sixth amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution have no real meaning. This case was a disaster to many, aside from the two victims of Michael Ryan. Among those affected are the taxpayers of Richardson County and of the State. The fact remains, however, that the attorneys appointed to represent the defendants in this bestial event are not guilty of any crime. They are honorable professional people and have been appointed by a court to perform a duty required by the Constitution. It is not appropriate to subject attorneys, appointed or otherwise, to the treatment seen in the fee hearing in this case. In such hearings, it is not appropriate to require appointed attorneys to submit income tax records to the court, as was done in this case, nor to submit such things as the attorney's notes made in preparation for final argument, as requested in the *Rehm and Faesser* case.

In horrifying cases such as this case, it is vital that we, as a State and a nation, maintain our decree of civilization and reliance on our Constitution. We must not sink to the level of nations that execute transgressors the morning after alleged offenses occur. Defense attorneys perform an absolutely essential function under our Constitutions and must be treated as honorable persons performing a necessary legal duty.

We note that applicant seeks interest on the amounts due him. He cites Neb. Rev. Stat. § 45-104 (Reissue 1988). The sum due Ligouri was not liquidated, but had to be evaluated and calculated. Interest is not due under such circumstances. The judgment of the trial court on the issue of fees granted for Louie M. Ligouri is reversed, and the cause is remanded with directions to enter an order in conformity with this opinion. It is to be understood that the fee herein awarded is for services rendered by Ligouri to defendant in both the Thimm and Stice matters and that the fees awarded herein are in addition to amounts paid to applicant before November 1, 1985.

REVERSED AND REMANDED WITH DIRECTIONS.