IN RE INTEREST OF ANTONE C. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. JOHNETTA C., APPELLEE,
MARY M. MORAN, INTERVENOR-APPELLANT, AND
DOUGLAS COUNTY, NEBRASKA, INTERVENOR-APPELLEE.
669 N.W.2d 69

Filed September 9, 2003.   No. A-02-849.

Susan Ann Koenig and Angela Dunne Tiritilli, of Law Office of Susan Ann Koenig, P.C., L.L.O., for intervenor-appellant.

Bernard J. Monbouquette, Deputy Douglas County Attorney, for intervenor-appellee.

HANNON, INBODY, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

Mary M. Moran, an attorney appointed as guardian ad litem for the minor children in these juvenile court proceedings,

appeals from the partial disallowance of the fee she sought for her services as guardian ad litem for the month of March 2002. We conclude that the trial judge abused his discretion in disallowing some of the items contained in Moran's statement of fees, but that the partial disallowance of other items was within the discretion of the trial court. Accordingly, we affirm as modified.

## BACKGROUND

The children in these proceedings were adjudicated under Neb. Rev. Stat. § 43-247 (Reissue 1998) on March 17, 2000. They were removed from the custody of their mother, Johnetta C., due to filthy and unwholesome conditions of the home, inadequate housing, inappropriate and excessive physical discipline, the mother's use of alcohol or controlled substances, and the mother's leaving the children without a caregiver.

On February 19, 2002, Moran filed a motion to terminate the mother's parental rights with respect to one child and a supplemental motion praying for the termination of the parental rights of that child's father. Both motions were withdrawn on April 9.

On March 28, 2002, a review and permanency planning hearing was held. A report and case plan prepared by the Department of Health and Human Services (DHHS) was introduced and adopted, and Moran's guardian ad litem report (GAL report) was introduced. It contained some recommendations that were different from those of the case plan. We summarize both reports below.

The hearing on Moran's fees was held on July 1, 2002. The bill of exceptions contains Moran's fee statement for her services as guardian ad litem for the month of March 2002. This statement is three pages in length. It contains many items which were not changed, contested, or relevant to any changes made to other items, but several items were changed by the trial judge. To show the form of the statement, we shall set forth only those items that were wholly or partially disallowed by the judge, those that relate to items that were changed, and the changes the judge made after the hearing:

| Date | Activity | Time Claimed by Moran | Time Allowed by Court |
|------|----------|-----------------------|-----------------------|
| March 12 | Fact investigation | 4.00 | 0.00 |
| March 13 | Fact investigation | 4.00 | 0.00 |
| March 15 | Reviewed DHHS file | 2.50 | 0.00 |
| March 20 | Conducted home visit | 2.00 | 1.00 |
| March 21 | Consulted with counselor | 0.10 | 0.10 |
| March 21 | Received and reviewed reports faxed by counselor | 0.10 | 0.10 |
| March 21 | Conducted home visit | 2.00 | 1.00 |
| March 25 | Conducted home visit | 1.50 | 1.00 |
| March 25 | Drafted portion of GAL report | 4.00 | 4.00 |
| March 25 | Drafted further portion of GAL report | 4.00 | 0.00 |
| March 27 | Completed GAL report | 6.00 | 0.00 |
| March 27 | Distributed GAL report | 1.00 | 0.00 |

The statement contains many other items for such things as telephone calls and consultation with DHHS personnel and therapists. A date and time are shown for each such item. The time charged for such items was quite minimal.

Moran testified. She was admitted to the practice of law in Nebraska in September 1993. She also has a bachelor of science degree in nursing and a master of psychiatric nursing degree. Her current hourly rate in private practice is $100. She testified to her very extensive experience as a guardian ad litem over a period of 9 years. She testified in some detail that she performed the services shown on the statement and that they were necessary services in her opinion.

She testified that she routinely keeps an ongoing record of her services and the time spent thereon and then gives that record to a clerk who types her statements. She reviews each statement to correct any errors and then submits the statement to the court administrator's office of the separate juvenile court of Douglas County. She testified that the fees are usually allowed as a matter of course, but that the March 2002 statement was not so approved. She was asked by the court administrator's office to describe

what she meant by the items in her statement called "fact investigation." In answer to that inquiry, she prepared a report that was received into evidence.

That report stated what the "fact investigation" involved. The activities involved are listed on slightly more than one typed page. This report does not list the time spent doing specific investigatory tasks, but, rather, describes the things that Moran felt obligated to investigate and why. In the report, she stated that the family situation of one mother, five children, and three known fathers required an investigation of activities of, events involving, and services provided to each of the nine people. Moran testified that four of the children had therapists and behavioral issues which required extra work on her part because of her "duty to look out for the well-being" of the children. Moran stated that she reviewed a stack of documents 3¾ inches tall consisting of notes from counselors, teachers, foster parents, visitation supervisors, and therapeutic supervisors; medical and psychological reports; criminal records; and many other documents too numerous to list in this opinion. Moran testified that the complicated family situation and history justified the time-consuming investigation. Except as listed on her statement, she did not introduce any evidence which would show how much time she spent on any given portion of the fact investigation.

Moran basically justified the time she spent on the fact investigation based upon the complicated family situation and the numerous problems she found its members to have. In her testimony, she explained that she conducted the investigations and prepared the GAL report, which she felt was her duty as guardian ad litem under the applicable statutes. She stated that she had received reports from DHHS, but that she understood she was supposed to do her own independent research on the facts and did so.

The judge cross-examined Moran on the home visits of March 20, 21, and 25, 2002, two of which lasted 2 hours and one of which lasted 1½ hours. (The judge allowed 1 hour for each of the three visits.) Moran testified that each visit was to the foster home of a different child or children.

Moran was cross-examined about spending 14 hours preparing the GAL report. She testified that she typed it herself on a computer.

An attorney, who testified that she was licensed to practice law in 1994, stated that she had served as a guardian ad litem in juvenile courts for a number of years. After establishing familiarity with Moran's statement of fees and the issues in the case, she testified that Moran's charges were fair and reasonable.

At the close of evidence, the trial judge characterized the fee statement as showing some charges for "reinventing the wheel." The judge recognized a statutory need for a written GAL report but stated, "[I]f we did this with every case, we'd be bankrupt probably within two months up here . . . I'm going to make some cuts." The judge also stated that he did not want Moran to feel he thought she did not put in the time she reported, but that the time was not necessary and that perhaps the report could have been done with more organization and efficiency. The judge expressed concern about the time spent investigating and preparing the report. He also stated that he would consider the fact that Moran filed a motion and supplemental motion to terminate parental rights and then withdrew them, which filings he suggested generated "a lot of busywork" for Moran. We find no charge in the statement that can be tied to the motions for termination of parental rights, and we recognize that this charge might have been included in a statement for another month.

On July 3, 2002, the juvenile court entered its order. The 44.96 hours for which Moran sought payment were decreased by 24 hours. She was allowed $1,048.05 for services rendered and $34.14 for costs, rather than the $2,248.05 in fees and $28.14 in costs that she requested in her statement.

## APPEAL PROCEDURE ON GUARDIAN AD LITEM FEE ISSUES

The procedure used to appeal this case causes us some concern. The documents filed to perfect the appeal seemed to generally be premised upon an assumption that Moran was appealing as a guardian ad litem on behalf of her minor wards. Probably for this reason, the motion to proceed in forma pauperis, its supporting affidavit, and the trial court's order granting in forma pauperis status came very close to being inadequate. As explained below, we understand Moran individually, not the minors, to be the appellant. However, we did find in the affidavit a statement which can

be interpreted to mean that Moran personally was unable to pay the costs of the appeal, and the trial judge signed the order granting in forma pauperis status. Therefore, we have concluded that this court has jurisdiction of Moran's appeal of the disallowance of her fees. See, *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002); *State v. Dallman*, 260 Neb. 937, 621 N.W.2d 86 (2000).

We draw this conclusion, that Moran personally is the appellant, from an analysis of Nebraska Supreme Court cases on attorney fees for court-appointed counsel in criminal cases under Neb. Rev. Stat. § 29-3905 (Reissue 1995), which was formerly Neb. Rev. Stat. § 29-1804.12 (Reissue 1989). In *In re Claim of Rehm and Faesser*, 226 Neb. 107, 113-14, 410 N.W.2d 92, 96 (1987), the court settled the procedure in cases of appeals from the allowance of fees for court-appointed counsel. In doing so, it said:

> We hold, therefore, that either appointed counsel or the county involved may appeal to [a higher] court from an order determining the amount of fees and expenses allowed appointed counsel under § 29-1804.12. Such an appeal is a proceeding separate from the criminal case. It should be docketed separately and disposed of without regard to the result of any appeal in the criminal case itself. In the absence of an appeal, the order of the district court is conclusive upon both appointed counsel and the county as to the amount allowed. *County of Boone v. Armstrong*, 23 Neb. 764, 37 N.W. 626 (1888), and all similar cases are expressly disapproved.

Neb. Rev. Stat. § 43-273 (Reissue 1998) provides in substance that the court before which the proceedings were had shall, upon hearing, fix a reasonable fee and that the county board shall allow the claim for the amount allowed by the court. This is the same procedure that is provided in § 29-3905 and that was provided in § 29-1804.12 when *In re Claim of Rehm and Faesser* was decided.

In *State v. Ryan*, 233 Neb. 151, 444 N.W.2d 656 (1989), court-appointed counsel's fees were also litigated separately and the attorney appealing was listed as the appellant and intervenor. Since the case identification name herein has necessarily already been selected, we conclude that for future cases when a guardian ad litem desires to contest a disallowance of a guardian

ad litem fee, the guardian ad litem is the appellant as an intervenor. Because Douglas County has appeared in this court on the issue of fees, we have designated it as "Intervenor-Appellee."

## ASSIGNMENTS OF ERROR

Moran alleges, summarized and restated to exclude arguments, that the trial court erred in (1) reducing the fees she requested and (2) failing to award her reasonable fees for services she was required to perform and did perform.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Anthony R. et al.*, 264 Neb. 699, 651 N.W.2d 231 (2002). Section 43-273 grants the juvenile court authority to determine fees paid to court-appointed guardians ad litem: "[G]uardians ad litem . . . shall apply to the court before which the proceedings were had for fees for services performed. The court upon hearing the application shall fix reasonable fees." An abuse of discretion standard has been employed in situations where the Legislature has granted the juvenile courts broad discretion to act or not to act. See, e.g., *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996) (prompt adjudication determinations are reviewed de novo to determine whether there has been abuse of discretion); *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990) (it is within trial court's discretion whether or not to permit child to be present at adjudication hearing in § 43-247(3)(a) proceeding). "The allowance, amount, and allocation of a guardian ad litem fee are matters within the initial discretion of the trial court . . . and will be set aside on appeal only when there appears to be an abuse of discretion by the trial court." *Halouska v. Halouska*, 7 Neb. App. 730, 749, 585 N.W.2d 490, 504 (1998). Accordingly, we conclude that we should review the juvenile court's decision on guardian ad litem fees de novo on the record for an abuse of discretion.

## ANALYSIS

The touchstone for awarding guardian ad litem fees is reasonableness, both of the necessity of the services rendered and of the fees awarded. See *Wacker v. Wacker*, 253 Neb. 630, 573

N.W.2d 113 (1998) (noting fees must be reasonably necessary and amount must be fair and reasonable). Except for general statements, we find very little guidance in other cases to assist either the trial court or this court in determining what a reasonable guardian ad litem fee is or the approach to be used to make that determination. A guardian ad litem is usually an attorney, and the services rendered by guardians ad litem are the same type of services attorneys regularly render for courts. Judges regularly have the opportunity to observe the rendering of services by guardians ad litem, the quality of such services in the particular court, the time spent on such services, and the charges usually made for such services. Courts are in the same position with regard to guardian ad litem services and fees as they are in the case of attorney fees. Therefore, we shall look to cases involving the setting of a reasonable attorney fee for some assistance in considering this guardian ad litem case.

██ Regarding attorney fees, the Nebraska Supreme Court has considered the import of the fact that

> [i]n Dumas v. King, 157 F. 2d 463 [(8th Cir. 1946)], it was stated: "While trial courts and appellate courts equally are regarded as experts on the value of legal services . . . a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will interfere only to correct a patent injustice, where the allowance is clearly excessive or insufficient . . . ."

*Specht v. Specht*, 148 Neb. 325, 335, 27 N.W.2d 390, 395 (1947). See, also, *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000).

In the case at hand, there was direct evidence from Moran and her witness that the services Moran rendered were necessary and that the time and dollar amount charged were reasonable. There was no direct evidence to the contrary.

██ In *Lippincott v. Lippincott*, 152 Neb. 374, 41 N.W.2d 232 (1950), there was undisputed expert testimony on the value of attorney fees and the trial court accepted that testimony. However, upon appeal, the Nebraska Supreme Court disallowed part of an attorney fee as too high. We understand the *Lippincott* case to hold that in the proper case, if the record supports the action, either the trial court or the appellate court can disallow

attorney fees as too high, without the support of expert testimony. This holding is consistent with the notion that both the trial court and the appellate court are experts on the value of legal services; but of course, the appellate court must give due deference to the trial court, as well as recognition of its opportunity for firsthand knowledge.

In the case at hand, the trial court did not take issue with the allowance of $50 per hour and indicated that it did not think that Moran had not actually spent the time she claimed. Therefore, in this case, we are not considering the reasonableness of the hourly rate or whether Moran spent the time claimed; rather, we are concerned with whether the services were necessary and whether the time spent performing the necessary functions was reasonable.

Moran argues that the trial court failed to recognize her duty as a guardian ad litem to do a complete assessment and evaluation under Neb. Rev. Stat. § 43-272.01 (Reissue 1998). That statute specifies a guardian ad litem's duties in a juvenile court proceeding. It provides that the guardian ad litem shall stand in lieu of the child's parent to defend the child's legal and social rights, may move for medical and psychological treatment and evaluation, shall make reasonable efforts to become familiar with the child, shall consult with the child and others with information and knowledge affecting the child, shall make recommendations to the court regarding temporary or permanent placement of the child, and shall "submit a written report to the court at every dispositional or review hearing, or in the alternative, the court may provide the guardian ad litem with a checklist that shall be completed and presented to the court at every dispositional or review hearing," § 43-272.01(2)(f). The record does not show that the trial court provided such a checklist, and we therefore conclude that Moran was required to file a report, not simply to complete a checklist.

The court disallowed two 4-hour charges for "Fact investigation." Moran's statement contains no other charges for fact investigation, although it contains several charges for telephone calls to courts, attorneys, DHHS, and therapists for information or consultation, all of them remarkably short. The record shows that this case involves five children with three different fathers and that the parents and children have mental and behavioral

problems that would clearly justify a guardian ad litem's spending more time investigating than in most cases. The details of Moran's fact investigation seem reasonable. There is no attack on her credibility, and the judge even indicated that he believed Moran spent the time she said she did. We are confident that the behavioral problems of the parents and children could not be mastered quickly, at least not sufficiently to the extent necessary to enable a conscientious guardian ad litem to recommend the course to be taken in representing the welfare of five wards.

■ In the face of testimony that the services were necessary and the charges reasonable, without something to support a finding that a guardian ad litem's fact investigation was not proper or not required, the disallowance of a charge as unreasonable on the ground that the investigation was unnecessary is questionable, particularly when the factual situation of the family is very complicated. The report of DHHS as well as the GAL report clearly show without dispute that the family situation, and hence the factual situation in this case, is unusually complicated. A perusal of the additional report Moran supplied to explain her "fact investigation" entries on the fee statement shows that the services she performed in this investigation were in compliance with the statutory recommendation. We perceive no basis for the court to disallow Moran charges for her investigation, and consequently, we find that the disallowance of the 8 hours for fact investigation was an abuse of discretion and must be vacated.

■ The trial court also disallowed the charge for 2½ hours of reviewing the DHHS file. Section 43-272.01(2)(c) provides that a guardian ad litem shall have "access to all reports resulting from any examination ordered under [Neb. Rev. Stat. §] 43-258 [(Reissue 1998) (preadjudication physical and mental evaluation, placement, restrictions, reports, costs)], and [that] such reports shall be used for evaluating the status of the protected juvenile." We think it necessarily follows that a guardian ad litem has the duty to read and comprehend DHHS reports. We do not know exactly what the DHHS file entailed, but we do have in evidence the court report, the case plan, the attached therapist reports, and other information. After a study of the documents in evidence, we find the trial court's determination

that the time shown by Moran in her statement was unreasonably long to be an abuse of discretion.

Moran charged a total of 5½ hours for three separate home visits, and the court allowed 1 hour for each visit. Such home visits are within the duties of a guardian ad litem as directed in § 43-272.01. The record shows that the children lived at different addresses. The visits were made just before the preparation of the GAL report. The record does not show the time for travel, but the traveling would have been for some distance in city traffic. We can find no basis for partially disallowing these charges as unnecessary or unreasonable, and we therefore conclude that to do so was an abuse of discretion.

Moran's statement contains charges tallying approximately 14 hours over 3 days in late March 2002 for preparing the GAL report, and the trial judge disallowed 10 of those hours. The record includes the March 28 disposition hearing where the DHHS case plan was approved and adopted by the court. At that hearing, Moran and six attorneys appeared—one representing the State, one representing the mother, one for each of the three fathers, and one representing Moran. The DHHS report and case plan and the GAL report were introduced. Both had attached reports from various professionals who tested or counseled the family members. The record demonstrates that the judge was already familiar with the evidence.

The DHHS report is a 15-page document, much of it single spaced. It contains the usual history of the family and its members, as well as that of the assistance DHHS has supplied to those involved. It devotes almost a full page to each child. It then has a "Family Assessment Conclusion." The "Case Plan and Progress Report" is separately titled. It is done in the usual form and contains goals, tasks, services, and evaluations of progress for the mother and permanency objectives for each child. There is then a two-page summary followed by specific recommendations for each parent and each child.

Moran's GAL report is 25 pages, double spaced. It starts with a half-page, single-spaced quotation from an affidavit, which quotation sets forth the grounds for the adjudication. It is difficult to see the value of this information to a judge of the court wherein the adjudication was made and the proceeding

had been had. In narrative form, the GAL report then lists the placement of one of the children. In the following six pages, it gives the information Moran gathered from foster parents and teachers about that child's behavior, the therapeutic services rendered or to be rendered to him, his past and present education, his visitation situation, the services being provided to him, and his views. The GAL report covers each child in turn under similar headings, using approximately four to six pages for each child. It then contains a four-page "Assessment" followed by slightly more than a page of "Recommendations to the Court."

The record shows that the case plan was signed on March 21, 2002. Moran testified that she was given a copy of all DHHS reports. The record does not specifically show that Moran had the DHHS report and case plan before she prepared the GAL report, but the DHHS report and case plan were dated a few days before Moran's fee statement shows she started work on the GAL report. In the GAL report, Moran refers to the DHHS report, stating that one child's "placement and services rendered are adequately covered in the [DHHS] court report." We find no other reference to the DHHS case plan or report in Moran's GAL report, but we take that information as proof that Moran had the DHHS report and case plan when she prepared the GAL report.

In summary, Moran's recommendations differ from those of DHHS in that DHHS recommends that the mother transition from therapeutic to semisupervised visitation with four of the children and continue therapeutic visitation with the fifth and that two of the fathers have supervised visitation, whereas Moran recommends that the mother have unsupervised visitation in her home with four of the children and that one father have supervised visits with his children at his home. At the hearing, Moran read her recommendations aloud, but she does not point out or argue in any fashion why her recommendations were right and DHHS' were wrong. Insofar as we can tell, the judge would have had to discern from the reports on his own why he should modify the case plan to adopt all or part of Moran's recommendations. In that situation, the elaborate GAL report and recommendations could not be expected to be effective and to that extent were unnecessary. In light of the statutory preference for the DHHS report,

minor differences of the GAL report with the DHHS report and case plan do not seem to have any value to the children.

Under Neb. Rev. Stat. § 43-285 (Reissue 1998), a juvenile court may order DHHS to present a case plan for a juvenile, and essentially, that plan is to be adopted unless a guardian ad litem or some other interested party proves by a preponderance of the evidence that the plan is not in the juvenile's best interests. There is even a special procedure for review of a disposition order when the court orders a plan other than the plan prepared by DHHS. See Neb. Rev. Stat. § 43-287.01 (Reissue 1998).

As noted above, Moran read aloud the recommendation portion of her GAL report and pointed out that her recommendations differed somewhat from those of DHHS, but she did not point out the reason for the differences. The judge offered each attorney the opportunity to speak, and generally, they each very shortly stated the amount of visitation they hoped would be granted to their respective clients. There was no discussion or argument in support of either set of recommendations. The judge specifically adopted the case plan as proposed by DHHS and Moran's recommendations "insofar as they are not inconsistent with [the case plan]." He also stated that Moran's GAL report was "an extremely thorough assessment" with "largely appropriate" recommendations and further stated, "I appreciate [its thoroughness]."

Under the statutory scheme, it seems reasonable to expect the GAL report to be a check upon, and a response to, the case plan. Moran's report mentions the DHHS report only once. In our view, the GAL report has a great deal of history about the parents and children that would necessarily be already in the court record, if not the judge's recollection. We understand that it would frequently be reasonable to call such historical facts to the attention of a judge to support a given position advocated by a guardian ad litem. We do not read the facts in Moran's GAL report as more than a detailed list of facts and background from which a reader may or may not draw his or her own conclusion. If this report were the only report available to the court, we would agree that it would be a useful report. When viewed in the light of the DHHS report and case plan, and of Moran's minimal

action to support her recommendations over the State's, much of it seems unnecessary.

To the extent that a guardian ad litem's investigation has uncovered significant material facts not contained in a DHHS report, or to the extent that the guardian ad litem disagrees with the recommendations in the DHHS report or case plan, it would seem reasonable for the guardian ad litem to prepare a report of such length as is necessary to convey and to advocate those facts and to rebut those recommendations to the court in a GAL report and, with the aid of the guardian ad litem's attorney, for the guardian to advocate his or her own position at the dispositional hearing. However, to the extent that the guardian ad litem is in agreement with the DHHS report and case plan, we think it is reasonable for the GAL report to simply reflect such agreement without restating the facts and recommendations. We see no point in the guardian ad litem's including in the GAL report facts which were not included in the DHHS report, unless the guardian ad litem has reason to believe that those facts would support a result different from that recommended by DHHS.

In this case, Moran's GAL report made recommendations slightly different from those of the DHHS case plan. The differences mainly concerned supervised visitation versus unsupervised visitation for some children; and while both reports recommended custody in DHHS, Moran recommended that such custody include placement in the home of the mother for two children, where the DHHS case plan excluded that possibility. As noted above, the GAL report makes only one reference to the case plan. The extent of Moran's advocacy of her position was to read her recommendation to the judge in open court.

At the conclusion of the hearing on fees, the judge, indicating an intent to lower Moran's fees, used the expression that Moran was "reinventing the wheel." After studying the file, we think we understand what the trial judge was trying to articulate on the spur of the moment. We interpret him to have said that in view of the record, what Moran and others knew had already been prepared and filed with the court and Moran's GAL report had a great deal of duplication which served no useful purpose. Perhaps a more correct expression would have been that the GAL report was "too much of a good thing" or was "replowing

the same ground" as the DHHS report. In any event, we cannot say that the trial judge abused his discretion in determining that to a large degree, the time spent preparing the GAL report was unnecessary and unreasonable.

We also find that there is no justification for the 1-hour charge for delivery of the GAL report to the attorneys. We conclude that the disallowance of 11 hours in connection with the GAL report was not an abuse of discretion.

Moran has filed a motion for attorney fees for the services of her attorney "in this matter," which we interpret to mean the attorney who represented her in this appeal. In support of her motion, she alleges that she was appointed as guardian ad litem, that the children who are her wards herein are indigent and unable to pay for this appeal, that she is "unable to pay the costs or pay attorneys fees in this matter," and that her "Motion to Proceed In Forma Pauperis was granted." Douglas County objects to such an allowance as inappropriate. Above, we have concluded that this is an appeal by Moran as an individual, and she is clearly litigating her right to compensation. In this state, attorney fees are generally allowed in such cases as are provided for by statute or where the uniform course of procedure has been to allow such fees. *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988). We know of no statute or uniform procedure which authorizes attorney fees for an individual in Moran's position. We therefore deny that motion.

## CONCLUSION

Upon a de novo review, we conclude that the juvenile court did not abuse its discretion in reducing or eliminating 11 hours related to the GAL report, but that the court did abuse its discretion in eliminating the other charges detailed above. We therefore modify the order appealed from to allow a total of $1,698 for fees and $34.14 for costs, but otherwise affirm.

AFFIRMED AS MODIFIED.