ATTORNEY FOR APPELLANT
GUARDIAN AD LITEM
Jill S. Swope
Sterba & Swope, LLP
Schererville, Indiana

ATTORNEY FOR AMICUS CURIAE
LAKE COUNTY BAR ASSOCIATION
Debra Lynch Dubovich
Levy & Dubovich
Highland, Indiana



FILED
Apr 30 2010, 1:48 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 45S03-0904-JV-133

IN RE THE PATERNITY OF N.L.P.

R. P.,

*Appellee (Petitioner below),*

v.

L. S. N/K/A L. B,

*Appellee (Respondent below).*

JILL S. SWOPE,

*Appellant-Guardian Ad Litem.*

Appeal from the Lake Superior Court, Juvenile Division, No. 45D06-0006-JP-467
The Honorable Elizabeth F. Tavitas, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 45A03-0805-JV-226

**April 30, 2010**

**Rucker, Justice.**

In this opinion we conclude that where the parties in a domestic relations dispute sign a written agreement retaining the services of a guardian ad litem, the trial court, when awarding fees and expenses incurred by the guardian ad litem, is bound to enforce the terms of the agreement unless it is contrary to public policy.

**Facts and Procedural History**

This appeal stems from a long-running paternity and custody dispute between R.P. ("Father") and L.B. ("Mother") regarding their daughter, N.L.P. ("Child") who was born out of wedlock in December 1999. By agreement of the parties and pursuant to court order, Father's paternity was established in February 2001. Mother was granted physical custody of Child and Father was granted temporary supervised visitation, ordered to pay child support, and ordered to provide Child with medical insurance. Within months thereafter conflicts arose between the parties regarding visitation. After Father filed his second petition for contempt citation and rule to show cause complaining that Mother was thwarting his efforts at visitation, the parties – both represented by separate counsel – filed a joint petition for the appointment of a guardian ad litem. Among other things the petition declared, "[t]he parties are continuing to encounter problems with respect to their minor child, [N.L.P], including issues regarding visitation and parenting. The parties believe that a Guardian Ad Litem will be well suited to interview the parties and make recommendations that would resolve the existing problems." Appellant's App. at 72. Mother and Father specifically requested the court to appoint Attorney Jill S. Swope. Id. And the trial court granted the motion. Appellant's App. at 76. Upon the appointment Mother and Father executed separate but identically worded letters of agreement captioned "Engagement of Services – Guardian Ad Litem." Appellant's App. at 278-79, 280-81. The agreement set forth the terms of Swope's services, her hourly billing rate of $150.00, that the parties would be billed by the quarter-hour, and the parties would be billed for various expenses including long-distance telephone calls, postage, fax charges, photocopies, and travel expenses. The agreement was ambiguous on whether each party would be responsible for one-half of the fees and expenses or whether the parties would be held jointly responsible for the total amount billed. In any event, at some point thereafter Father filed a petition to change custody.

Swope remained involved in this paternity matter from February 2004 through March 2008, when she requested to be released from service. See Ind. Code § 31-32-3-8 ("A guardian ad litem or court appointed special advocate serves until the juvenile court enters an order for discharge . . . ."). During this four-year period, Swope performed a variety of tasks. As the Court of Appeals recounted:

> [Swope] prepared and submitted two court-ordered GAL reports; made multiple home visits to both parents' households; supervised parenting time on more than one occasion; supervised parenting exchanges under order of the court; made a visit to N.L.P.'s school; reviewed parenting time records and video/audio recordings; and had conversations with therapists, school officials, teachers, law enforcement personnel, Department of Child Services personnel, staff at the supervised parenting time facility, the custodial evaluator, both parents, N.L.P., and other family members. Swope also reviewed criminal investigation records, medical records, school records, therapy records, and other documents provided by the parents. Additionally, as part of her GAL responsibilities, she prepared and submitted several pleadings on behalf of N.L.P., which addressed a lack of contact between N.L.P. and Father. Further, she prepared for and attended hearings on multiple occasions including the six day hearing in 2007 on all pending matters, in which she participated through testimony as well as cross-examination of witnesses.

In re N.L.P., 898 N.E.2d 403, 405-06 (Ind. Ct. App. 2008). The quality of Swope's work has never been in dispute.

At the trial court's direction, and following a six-day hearing on all pending matters in the parties' dispute, Swope submitted her request for guardian ad litem fees. The request included billing statements and time records which established that as of October 23, 2007, the sum of incurred fees and expenses totaled $34,800.00, for which she had received payment from Father in the amount of $11,480.80 and from Mother in the amount of $2,678.32. Appellant's App. at 294-95.

The trial court issued its order on December 27, 2007. Regarding the substantive dispute between the parties – which is not at issue in this appeal – the trial court granted Father's petition to change custody, ordered Mother's visitation to be limited and supervised, and modified the parties' child support obligations. With respect to Swope's request for fees the trial court

3

determined that "although the GAL has conducted a thorough investigation, the GAL fees are not reasonable." Appellant's App. at 18. The trial court's determination was based on the following findings: (1) Swope charged by the quarter-hour, rather than tenths per hour, (2) charges for long distance calls, copying and faxing should have been included as overhead in the total hourly rate, (3) the income of the parties and their ability to pay, and (4) some of the services Swope provided duplicated the services provided by the court appointed custody evaluator. Appellant's App. at 18-19. Declaring that both Mother and Father are responsible for paying one-half of the fees, the trial court reduced the guardian ad litem fees to $20,000.00. Swope filed a motion to correct error, which the trial court denied after a hearing. However, in doing so the court acknowledged error in basing its unreasonableness finding on Swope's billing by the quarter-hour. Appellant's App. at 30.

Swope appealed. Neither Mother nor Father filed a brief in response. Noting that the reasonableness of the amount of guardian ad litem fees in paternity cases is a matter of first impression, the Court of Appeals vacated in part the trial court's order and remanded the case because the trial court did not adequately support its determination that the $20,000.00 fee ordered by the trial court was reasonable. However, the Court of Appeals determined *sua sponte* that Swope's fees were in fact unreasonable because Swope was acting as both a guardian ad litem and an attorney and thus "should have billed her duties separately and differentiated between when she was performing duties as the GAL and when she was performing legal work as an attorney." In re N.L.P., 898 N.E.2d at 408. Having previously granted transfer thereby vacating the opinion of the Court of Appeals, we now reverse the judgment of the trial court and remand this cause for further proceedings.

**Discussion**

In a custody dispute underlying a paternity action, the attorneys representing each of the competing adults must effectively represent the interests of their clients. However, the interests of the adults are not always consistent with the best interests of the child. In re Paternity of H.J.F., 634 N.E.2d 551, 553 (Ind. Ct. App. 1994). As a consequence, with or without a request from the parties, the trial court is empowered to appoint a representative for the child in the form of a guardian ad litem, or court appointed special advocate, or both. Ind. Code § 31-32-3-1. A

4

guardian ad litem may be an attorney, a volunteer, or an employee of certain statutorily designated county programs whose responsibility is to "(1) represent and protect the best interests of a child; and (2) provide the child with services requested by the court, including: (A) researching; (B) examining; (C) advocating; (D) facilitating; and (E) monitoring the child's situation." Ind. Code § 31-9-2-50. And under Indiana Code section 31-14-18-2(a), the trial court may order a party to an action to pay: "(1) a reasonable amount for the cost to the other party of maintaining an action under this article; and (2) a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment."

In this case both the trial court and the Court of Appeals focused on the reasonableness of the requested guardian ad litem fees. However, we are of the view that this focus is misplaced. It is true that courts are sometimes called upon to adjudicate the reasonableness of fees charged or hours billed in disputes between lawyers and clients. But here, the clients neither contested Swope's bill nor participated on appeal. There certainly are domestic relations cases in which the parties request appointment of a guardian ad litem, or the court makes an appointment on its own motion, and there are no terms of engagement other than those setting forth the duties and responsibilities of the guardian ad litem. See Ind. Code § 31-9-2-50. In such situations the reasonableness of the guardian ad litem's compensation will likely be subject to the trial court's discretion. But that is not what happened here. Rather, the parties separately entered into written agreements with the guardian ad litem that set forth hourly rates among other matters. We regularly emphasize the very strong presumption of the enforceability of contracts that represent the freely bargained agreement of the parties. See Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1129 (Ind. 1995). Although we have never specifically considered this principle with respect to guardians ad litem, we have applied it to other agreements in domestic relations cases. Haville v. Haville, 825 N.E.2d 375, 378 (Ind. 2005) (maintenance); Pond v. Pond, 700 N.E.2d 1130, 1136 (Ind. 1998) (shifting attorney fees); Voigt v. Voigt, 670 N.E.2d 1271, 1277-78 (Ind. 1996) (maintenance).

Courts may of course refuse to enforce private agreements on public policy grounds. Three types of situations are usually cited in this regard: (1) agreements that contravene a statute; (2) agreements that clearly tend to injure the public in some way; and (3) agreements that are

5

otherwise contrary to the declared public policy of this State. <u>Fresh Cut, Inc.</u>, 650 N.E.2d at 1130. And we have applied this exception to the enforceability presumption in domestic relations cases. <u>See</u> <u>Straub v. B.M.T. by Todd</u>, 645 N.E.2d 597, 598-600 (Ind. 1994) (declaring preconception contract absolving father of support obligations void and unenforceable). But there has been no contention in this case that the agreements between Mother, Father, and the guardian ad litem fall into any of these categories.

The trial court refused to enforce the terms of the agreements, not on public policy grounds, but on grounds that (1) charges for long distance calls, copying, and faxing should have been included in the hourly rate; (2) Mother's and Father's incomes were such that they could not afford to pay the amounts sought; and (3) some of the services for which the guardian ad litem requested payment duplicated those provided by a court-appointed custody evaluator. As to the first of these, Mother and Father – represented separately by their own lawyers – explicitly agreed that these expenses would be paid apart from the guardian ad litem's hourly rate. We see no basis for the trial court to modify the terms of the parties' agreements. As to the second, it may be appropriate to allow Mother and Father to make payments over time in installments, especially since the services were rendered over a period of four years. However, absent any cap on fees in the parties' agreements or provisions in the agreements related to the ability to pay, we see no authority for the trial court to means test the agreements. And with respect to duplication of services with the court-appointed custody evaluator, we again see no basis for the court to modify the parties' agreements. To the extent there was any duplication, the services performed by the custody evaluator were performed for the benefit of the court; and those performed by the guardian ad litem were performed for the benefit of Child. It is not unusual in litigation that the same or similar services are duplicated for the benefit of different parties and the court. <u>See, e.g.</u>, <u>Arrieta v. State</u>, 878 N.E.2d 1238, 1245 (Ind. 2008) (discussing difference between "defense interpreters" that primarily serve non-English speaking defendants, and "proceedings interpreters" that serve the whole court); <u>Overstreet v. State</u>, 877 N.E.2d 144, 169 (Ind. 2007), <u>cert. denied</u>, 129 S. Ct. 458 (2008) (psychiatrist appointed by court to evaluate defendant's mental health at time of offense and defendant retained own mental health professionals to provide same service).

In this case the trial court erred by failing to enforce the terms of the parties' written agreements. We do not reach the question of the factors a trial court should consider in determining the reasonableness of the amount requested for guardian ad litem fees in the absence of a written agreement. We note in passing however that we disagree with our colleagues on the Court of Appeals that a person acting as a guardian ad litem and as an attorney should bill separately for her service and failing to do so means that the resulting fees are presumptively unreasonable. In re N.L.P., 898 N.E.2d at 408. Both attorney and non-attorney guardians ad litem have the same statutory responsibility: representing and protecting the best interests of a child and providing the child with services that are requested by the court which include researching, examining, advocating, facilitating, and monitoring the child's situation. Ind. Code § 31-9-2-50. The lines are blurred when a guardian ad litem is also an attorney. A two-tiered billing system that attempts to parse which particular services are unique to an attorney and which are not is in our view at least unnecessary and at most unworkable. We also observe that some courts have largely addressed the issue of guardian ad litem fees by local rule.[1]

## Conclusion

Because there was an absence of evidence that the parties' agreements were void as against public policy, and the trial court made no findings as such, it was bound to enforce the

---

[1] See e.g., The Allen Circuit and Superior Court Family Law Local Rules that provide in part:

> **Attorney Guardian ad Litem and Pauper Counsel Fees** –
> Services by attorneys appointed by the court to serve as pauper counsel or as a guardian ad litem shall be deemed quasi pro bono and shall be paid upon submission of a claim for services as restricted by the court's fee schedule. The fee schedule will be based upon an hourly fee as set forth in the court's order of appointment. With the exception of costs of copying and postage, any fees or costs not set out in the fee schedule must be pre-approved by the court. By acceptance of appointment, the court appointed counsel agrees to abide by the fee schedule established by the court and further agrees to timely submit all claims for payment. Claims for payment should be submitted on the day services are rendered unless other arrangements are made with the court. Any claims for fees not submitted within thirty (30) days from the date the services were rendered will be deemed waived and such services will be regarded as rendered entirely pro bono.

LR02-JV00-737.

7

terms and conditions of the agreements.  We therefore reverse the judgment of the trial court and remand this cause for further proceedings.


Shepard, C.J., and Dickson and Sullivan, JJ., concur.
Boehm, J., dissents in part with separate opinion.

**Boehm, Justice, dissenting in part.**

I agree with the majority that the hourly rate agreed by the parties is presumptively enforceable. I also agree that the rules commonly cited as relevant to evaluating an attorney's services are not directly applicable to a guardian ad litem's services. But, like any attorneys' fee agreement, an agreement of a guardian ad litem, whether or not the guardian ad litem is an attorney, is subject to the reasonableness requirement that is imposed by our professional obligations. Ind. Professional Conduct Rule 1.5(a); see Rubenstein v. Rubenstein, 945 A.2d 1043, 1052 (Conn. Ct. App. 2008) (applying the principles applicable to attorneys' fees to examine the propriety of guardian ad litem fees); Keisling v. Keisling, 196 S.W.3d 703, 729–30 (Tenn. Ct. App. 2005) (same); In re Antone C., 669 N.W.2d 69, 76 (Neb. Ct. App. 2003) ("Courts are in the same position with regard to guardian ad litem services and fees as they are in the case of attorney fees"). I also agree that the agreement's provision for reimbursement of incidental expenses is enforceable, subject to the same reasonableness standard which does not appear to be in issue here.

I depart from the majority and agree with the Court of Appeals that the trial court may review the reasonableness of the services rendered. Even if the hourly rate agreed is reasonable, a fee agreement is not a blank check for the attorney to fill in the amount of services rendered irrespective of the need for services. See Trinkle v. Leeney, 650 N.E.2d 749, 754 (Ind. Ct. App. 1995) ("Reasonable fees are not necessarily determined by the terms of the attorney-client contract."); Restatement (Third) of the Law Governing Lawyers § 34 (2000) (setting forth the principle that "[a] lawyer may not charge a fee larger than is reasonable in the circumstances" and stating that "in fee disputes between lawyer and client, a fee will not be approved to the extent it violates [this principle] even though the parties had agreed to the fee."). Moreover, the trial court is in the best position to determine the extent to which the services rendered were in fact required or useful. Venture Enters., Inc. v. Ardsley Distribs., Inc., 669 N.E.2d 1029, 1033 (Ind. Ct. App. 1996) ("Since the judge is considered an expert, our decisions continue to adhere to the view that he may judicially know what constitutes a reasonable fee.").

Here the trial court made that determination and found that much of what was done by the guardian ad litem duplicated the services of other attorneys. As the majority observes, in a multiparty proceeding services of attorneys for some parties may duplicate those rendered by

attorneys for others. But whether that duplication is reasonable is a factual proposition best evaluated by the trial court. See Keisling, 196 S.W.3d at 731 ("[T]he trial court is in the best position to determine whether the [guardian ad litem's] services were of assistance to the court.").

I do not agree with the Court of Appeals that an attorney functioning as guardian ad litem is required to bill separately for legal and nonlegal services. Here the parties agreed on an hourly rate of $150 that the attorney says is approximately two thirds of her normal hourly rate as an attorney. If the parties choose to agree on a blended hourly rate that reflects both legal and nonlegal services, I would find that presumptively valid.

I would affirm the trial court.